(51 Misc. Rep. 413.)

### PEOPLE ex rel. NEW YORK ELECTRIC LINES CO. v. ELLISON, Com'r., et al.

(Supreme Court, Special Term, New York County. September, 1906.)

**1. CORPORATIONS—ORGANIZATION—COMMENCEMENT OF BUSINESS.**

Plaintiff corporation was organized in 1882 for the purpose of maintaining and leasing lines of electrical conductors to be placed underground, and obtained a franchise from the city of New York to lay such wires underground within one year from its incorporation. ·Held to satisfy the requirement of laws in force at the time of its incorporation, which provided that, if any corporation should not organize and commence a transaction of business within that period, its corporate powers should cease.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 103.]

**2. ELECTRICITY—ELECTRIC LIGHT COMPANIES—FRANCHISES.**

A franchise obtained by an electric light company from a city was irrevocable by the city, where it was not forfeited by any terms of the agreement with the city.

**3. SAME—RIGHT TO CONSTRUCT CONDUITS.**

Laws 1885, p. 852, c. 499, created a board of commissioners of electrical subways, and provided that any corporation desiring to lay wires underground should submit its plans to the board, and, failing this, the board was empowered to devise a subway which all operators of electrical conductors should be bound to use. Held, that by such act the individual right of an electrical corporation, organized in 1882 to open streets for the laying of electrical conductors in conduits of its own, was lost, and an application, based on its franchises to lay wires under the streets, for peremptory mandamus requiring the commissioner of water supply, gas, and electricity to grant permission to construct such subways, would be denied.

Application by the People, on the relation of the New York Electric Lines Company, for writ of mandamus to William B. Ellison, com· missioner, and others. Motion denied.

·Affirmed on appeal. 101 N. Y. Supp. 55.

Alton B. Parker, Tracy C. Becker, J. Aspinwall Hodge and Frank B. Vermilya, for relator.

William P. Burr, William J. Clarke, Leonce Fuller, and John J. Delany, corp. counsel, for respondents.

BISCHOFF, J.   This is a motion for a peremptory writ of mandamus directing the respondent, commissioner of water supply, gas, and electricity, to grant a certain application made to him by the relator, the New York Electric Lines Company, for permission to construct subways or conduits beneath the surface of certain streets of this city, and further directing the respondents Ahearn and Haffen to approve the permit of the commissioner, when issued, so far as that permit relates to streets in the boroughs of which each is, respectively, president.

The relator is a corporation, organized in the month of October, 1882, under the general telegraph act (Laws 1848, p. 392, c. 265), "for the purpose of owning, conducting, using, maintaining and leasing lines of telegraph wires or other electric conductors for telegraphic or telephonic communication, and for electric illumination, to be placed under the pavements of the streets, avenues and public highways of the city of New York and Brooklyn, * * * and for the purpose of owning franchises for laying and operating the said lines of electric conductors."   On April 10, 1883, the board of aldermen of the city of New York granted permission to the corporation to lay wires in and through the streets of the city, which privilege or license was accepted in writing; but no actual work of construction was ever begun, and no wires have ever been laid, by the corporation pursuant to the permission thus given.   It appears, however, that the company proceeded to procure the control of patents covering devices applicable to underground electric construction; that it maintained an office and factory, was engaged in the preparation of plans and designs, and expended between $30,000 and $50,000 in preparatory and experimental work during the first year of its existence.   On May 18, 1883, the company filed in the office of the county clerk a map showing the route of its proposed electrical conductors; and on July 21, 1886, it applied to the commissioner of public works for a permit to open the streets, the denial of which application, upon the ground that the commissioner was not the proper official to grant the permit, was followed by litigation, consistently unsuccessful, to enforce the company's asserted rights in the matter.   The litigation ended in the year 1892, since which time nothing appears to have been done by the company, excepting to resist two applications to the Attorney General looking to the annulment of its charter, and excepting its payment of the annual taxes upon its corporate property and upon the assessed value of its corporate franchise.   On December 8, 1905, this company, the relator, filed with the predecessor of the respondent commissioner applications for permits to open the streets, and certain discussion as to the relator's standing to demand the permits resulted.   Finally, on May 11, 1906, the commissioner refused the permit, upon the ground that "the New York Electric Lines Company has no valid franchise or rights in the streets

in the city, nor has it a legal corporate existence." Upon this state of facts a writ of mandamus is applied for.

On behalf of the respondents it is shown that on May 18, 1906, the city, through a resolution adopted by the board of estimate and apportionment, with the approval of the mayor, declined its election to terminate and revoke the permission or privilege granted to the relator in the year 1883 to lay wires in and through the streets of the city; and it is contended that whatever rights the relator may have had, through its incorporation and the earlier grant of privileges, were lost through inaction, which, it is also claimed, terminated the existence of the corporation, without further proceedings, by the force of the statute. Rev. St. (1st Ed.) pt. 1, c. 18, tit. 3, § 7. This statute, in force when the relator was incorporated in 1882, provided:

"If any corporation hereafter created by the Legislature shall not organize and commence the transaction of its business within one year from the date of its incorporation, its corporate powers shall cease."

It is claimed for the respondents that this provision of the statute was self-executing (Brooklyn Steam T. Co. v. City of Brooklyn, 78 N. Y. 524; Matter of Brooklyn W. & N. R. Co., 72 N. Y. 245), and, for argument, I may assume that it was, although the requirement to "organize and commence the transaction of its business" lacks much of the definite character of the conditions which were considered in the cases last cited, and is more closely within the rule of construction applied in Matter of Kings County Elevated R. R. Co., 105 N. Y. 97, 120, 13 N. E. 18, where it was held that a statute providing for the "release and forfeiture" of franchises of the incorporation, upon default of certain conditions, was not self-executing, because the conditions were not defined by some specific act as in the case referred to and which the court distinguished. It is quite apparent, however, that the relator did conform to the condition of the statute, as expressed. It organized within one year and also commenced the transaction of its business; for it obtained a franchise from the city to lay wires underground, one of the purposes of its incorporation, as stated in its charter. The statute did not require that it should commence the work of construction of electrical subways, nor that it should undertake any particular endeavor. One step in the transaction of its business within the year was a commencement, and, when obtaining a franchise from the city, it took that step and did commence the transaction of business. The corporate life of the relator was not, therefore, brought to an end by the statute; and if its subsequent inaction was to affect its right to exist, this was a question for the state to raise in direct proceedings for the annulment of the charter. People v. U. & D. R. R. Co., 128 N. Y. 240, 248, 28 N. E. 635. So, too, it may be held that the franchise from the city, obtained by the relator in the year 1883, was irrevocable by the city, because not forfeited by any term of the agreement itself (People v. O'Brien, 111 N. Y. 1, 18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684); but, as I view the case, the application must be denied upon the ground that the franchise was modified by the state, in the exercise of the police power, and that the re-

lator's individual right to open the streets, for the laying of electrical conductors in conduits of its own, has passed.

By chapter 499, p. 852, of the Laws of 1885 there was provided a system for the regulation of underground electrical conduits, to be carried into effect by a board of commissioners of electrical subways, created by the act. It was further provided that any persons or corporations desiring to lay wires underground in the streets of cities should, within 60 days after the passage of the act, submit to the board their plans for that purpose; and, failing this, the commissioners were empowered to devise a ground subway which all operators of electrical conductors under the streets should be bound to use. That this regulation was a valid exercise of the police power and thus to be upheld, notwithstanding its effect upon the contract rights existing by virtue of the relator's charter and the franchise from the city, has been settled by conclusive authority (People ex rel. N. Y. Electric Lines Co. v. Squire, 14 Daly, 154; Id., 107 N. Y. 593, 14 N. E. 820, 1 Am. St. Rep. 893; Id., 145 U. S. 175, 12 Sup. Ct. 880, 36 L. Ed. 666); and there is no provision in the subsequent statutes amending this "subway act," (Laws 1886, p. 732, c. 503; Laws 1892, p. 519, c. 263), which in any way removes the restriction to use the general subway devised and operated in this city. The effect of the "subway act" was to give the relator 60 days in which to assert its right to lay its wires in its own conduits; and thereafter it was in no better position than any other person or corporation for the purposes of a claim of right to open the streets and operate a private and individual system of its own.

This application is based upon the relator's franchise to lay wires under the streets, and is not founded upon facts showing the failure of the respondent to provide sufficient general facilities for the operation of electrical conductors. Indeed, the only facts presented upon this branch of the subject are contained in the respondent's papers, and disclose the sufficiency of the present system to meet all requirements. As I have noted, the relator's franchise has been so modified by competent legislation that it cannot assert an individual right to operate its own subway system; and, this assumed right being the sole basis of the application before me, I must hold that the papers do not justify the granting of a writ of mandamus.

Motion denied, with $10 costs.