The People of the State of New York ex rel. The West Side Electric Company, Appellant, *v.* Consolidated Telegraph and Electrical Subway Company, Respondent.

The West Side Electric Company, Appellant, *v.* Consolidated Telegraph and Electrical Subway Company, Respondent.

· 1. New York City — Power to Grant Franchise for Electric Lighting Vested in Board of Aldermen, Not Board of Electrical Control, on October 30, 1896. The power to grant to a corporation organized under the Transportation Corporations Law (L. 1890, ch. 566, § 61, embodying chapter 37 of the Laws of 1848 and chapter 512 of the Laws of 1879), a franchise to lay and construct suitable wires or other conductors in subways under streets, avenues, public parks and places in the city of New York for conducting and distributing electricity, was

1907.] People ex rel. W. S. El. Co. v. C. T. & E. S. Co. 59

N. Y. Rep.]                    Statement of case.

vested in the "municipal authorities," and on October 30, 1896, those authorities were the board of aldermen and not the board of electrical control, established by chapter 716 of the Laws of 1887, and conferring upon such board certain powers with respect to the occupation of the streets for electric lighting; that act neither expressly nor by implication conferred the power to grant such franchise; the purpose of the act was to regulate the exercise of rights after they had been acquired, not to create them; the power to create them was left precisely where it was before, in the "municipal authorities," *i. e.*, the board of aldermen.

2. STATUTES — PRACTICAL CONSTRUCTION. The doctrine of practical construction has no application to statutes free from ambiguity or not subject to any reasonable doubt as to their meaning.

*People ex rel. West Side El. Co.* v. *Consolidated Tel. & El. Subway Co.*, 110 App. Div. 171, affirmed.

*West Side El. Co.* v. *Consolidated Tel. & El. Subway Co.*, 110 App. D¹⁻ 171, affirmed.

(Argued November 26, 1906; decided January 8, 1907.)

APPEAL in the first above-entitled proceeding from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 3, 1906, which affirmed an order of Special Term quashing an alternative writ of mandamus and dismissing the proceeding.

Appeal in the second above-entitled action from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 24, 1906, affirming a judgment in favor of defendant entered upon a decision of the court on trial at Special Term.

The first case was a special proceeding in which the relator prayed for a writ of mandamus commanding the respondent to permit the relator to place in its electric subway in the city of New York two cables for electric lighting purposes and to open certain manholes and service boxes for that purpose.

The second case was a suit in equity in which the plaintiff sought to enjoin the defendant from interfering with or obstructing the plaintiff in the maintenance and operation of its cables and electrical conductors in the aforesaid subway and from interfering with the peaceable possession and enjoyment thereof by the plaintiff.

The cases were tried together at Special Term upon the same evidence and were both decided in favor of the defendant.

The other facts, so far as material, are stated in the opinion.

*William D. Guthrie* and *F. Kingsbury Curtis* for appellant. Chapter 716 of the Laws of 1887 transferred from the common council to the new board of electrical control the power to consent that duly incorporated electric light companies might "lay, erect and construct" electrical conductors in the streets of the city of New York; unmistakably expressed, it must be given effect. (*Anglo-Am. Prov. Co.* v. *Davis Prov. Co.,* 169 N. Y. 506; *People ex rel. Bockes* v. *Wemple,* 115 N. Y. 302; *Tompkins* v. *Hunter,* 149 N. Y. 117; *McCluskey* v. *Cromwell,* 11 N. Y. 593; *Schnaier* v. *N. H. & I. Co.,* 182 N. Y. 83; *Alfson* v. *Bush Co.,* 182 N. Y. 399; *Coal Co.* v. *Donley,* 73 Ohio St. 298.) The exercise of the power to consent that a duly authorized electric lighting corporation, may lay, erect and construct electric wires or conductors in the streets of a city is not a legislative function, but is essentially administrative or executive. (*Beekman* v. *T. A. R. R. Co.,* 153 N. Y. 144; *Potter* v. *Collis,* 156 N. Y. 16; *Matter of N. Y. El. R. R. Co.,* 70 N. Y. 327; *People* v. *Sturtevant,* 9 N. Y. 263; *Milhau* v. *Sharp,* 27 N. Y. 611; *People ex rel. Murphy* v. *Kelly,* 76 N. Y. 475; *People* v. *U. & D. R. Co.,* 128 N. Y. 240; *Matter of Thirty-fourth St. R. Co.,* 102 N. Y. 343; *Attorney-General* v. *Common Council of Detroit,* 29 Mich. 108; *City of Philadelphia* v. *L., etc., Ry. Co.,* 4 Brewst. 14.)

*Alton B. Parker, Samuel A. Beardsley* and *Henry J. Hemmens* for respondent. The power to give the consent required by the Transportation Corporations Law was vested in the board of aldermen in October, 1896. (*Ghee* v. *N. U. Gas Co.,* 158 N. Y. 510; *People ex rel. W. G. Co.* v. *Deehan,* 153 N. Y. 528.) The power to give the consent required by the Transportation Corporations Law was not taken from the

board of aldermen and vested in the board of electrical control by section 1 of the act of 1887. (*Maxmilian* v. *Mayor*, 62 N. Y. 160 ; *O'Brien* v. *Mayor, etc.*, 65 Hun, 112 ; 139 N Y. 543 ; *People ex rel. N. Y. E. L. Co.* v. *Squire*, 107 N. Y. 593 ; 145 U. S. 175.)  Chapter 716 of the Laws of 1887 is a police regulation and conferred only administrative or ministerial powers on the board of electrical control. (*Ghee* v. *N. U. Gas Co.*, 158 N. Y. 510 ; *Gallagher* v. *Keating*, 40 App. Div. 85 ; *U. S. Ill. Co.* v. *Grant*, 55 Hun, 222 ; *Armstrong* v. *Grant*, 56 Hun, 226 ; *People ex rel. N. Y. E. L. Co.* v. *Squire*, 107 N. Y. 593 ; *A. R. T. Co.* v. *Hess*, 125 N. Y. 641 ; *W. U. T. Co.* v. *Mayor, etc.*, 2 Am. El. Cas. 195.)  The Subway Act of 1887 did not withdraw the power from the board of aldermen to grant consents to the vesting of electric franchises and transfer them to other "municipal authorities," to wit, the board of electrical control.  The power to grant franchises to electric companies in 1896 was vested in the board of aldermen. (*S. W. W. Co.* v. *Vil. of Skaneateles*, 161 N. Y. 165 ; *Beekman* v. *T. A. R. R. Co.*, 153 N. Y. 144 ; *People ex rel. W. Gas Co.* v. *Deehan*, 153 N. Y. 528 ; *People* v. *O'Brien*, 111 N. Y. 32 ; *Suburban R. T. Co.* v. *Mayor, etc.*, 128 N. Y. 510 ; *Matter of Kings Co. El. R. R. Co.*, 105 N. Y. 97 ; *Ghee* v. *N. U. Gas Co.*, 34 App. Div. 551 ; 158 N. Y. 510.)  Neither the board of electrical control nor its predecessors were in 1896 the "municipal authorities" of the city of New York. (*Maxmilian* v. *Mayor, etc.*, 62 N. Y. 160 ; *Tone* v. *Mayor, etc.*, 70 N. Y. 157 ; *Heiser* v. *Mayor, etc.*, 104 N. Y. 68 ; *D., L. & W. R. R. Co.* v. *City of Buffalo*, 65 Hun, 464 ; *People ex rel. W. G. Co.* v. *Deehan*, 153 N. Y. 530.)

Willard Bartlett, J.   The rights of the parties to this litigation are dependent upon the question whether on October 30, 1896, the power to grant a franchise to lay and construct suitable wires or other conductors in subways under streets, avenues, public parks and places in the city of New York for conducting and distributing electricity, to a corpo-

ration organized under the Transportation Corporations Law, was vested in the board of electrical control in and for the city of New York, or in the board of aldermen of said city.

The appellant is a corporation organized under subdivision 2 of section 61 of the Transportation Corporations Law (Laws of 1890, chap. 566) the objects for which it was created being stated in its certificate of incorporation as follows : " Manufacturing and using electricity for producing light, heat or power and in lighting streets, avenues, public parks and places in the City and County of New York."

The respondent is a corporation organized for constructing electrical subways · in the streets, public parks and public places in the city of New York for holding electrical conductors including those of electric lighting companies duly organized and authorized to conduct business in the borough of Manhattan. Under date of July 27, 1886, and April 7, 1887, this corporation entered into certain contracts with the board of commissioners of electric subways in and for the city of New York (the predecessor of the board of electrical control) whereby it undertook to build, equip, maintain and operate subways for electrical conductors in said city, in accordance with plans and specifications furnished by the board, and by the terms of which it was permitted to lease space in such subways as therein provided. The legislature expressly ratified these contracts by chapter 716 of the Laws of 1887. The first of these contracts contains the following provision, the respondent corporation being the party of the second part :

" V. The spaces in said subway shall be leased by the party of the second part to any authorized company, person or firm operating or intending to operate electrical conductors in any street, avenue or highway in the city of New York that may apply for the same."

The second contract, in relation to the same subject, provided as follows :

" IV. The space in said subways shall be leased by the party of the second part to any company or corporation having lawful power to operate electrical conductors in any street, avenue

or highway in the city of New York that may apply for the same, including any company or corporation having, or which shall acquire lawful power to manufacture, use or supply electricity."

The act by which these contracts were ratified expressly empowered the courts to enforce their provisions "by proper proceedings in the nature of a writ of mandamus or by mandamus." (Laws of 1887, chap. 716, § 7.)

The same act established the board of electrical control to succeed the board of commissioners of electrical subways as constituted under an earlier statute (Laws of 1885, chap. 498) and contained the following provision in respect to its powers:

"All the powers and duties conferred or imposed by the said act, chapter four hundred and ninety-nine of the laws of eighteen hundred and eighty-five, upon the commissioners appointed thereunder in and for the city of New York, and all the powers and duties heretofore by any law conferred or imposed upon the local authorities of said city, or any of them, in respect to or affecting the placing, erecting, construction, suspension, maintenance, use, regulation or control of electrical conductors or conduits or subways for electrical conductors in said city are hereby transferred to and conferred and imposed upon, and shall hereafter be exclusively exercised and performed by the said board of electrical control, constituted as provided in this act, and its successors as hereinafter provided."

Assuming that the authority thereby conferred was broad enough to empower the board of electrical control to grant a franchise to occupy the subways with electric conductors, the appellant on October 26, 1896, applied to the board "to grant to the said company the franchise to erect and maintain wires as its business in the city of New York may require, under such regulations as may be prescribed by the said Board;" and on October 30, 1896, the board adopted a resolution declaring that the West Side Electric Company "be and it hereby is authorized and empowered to lay and construct

suitable wires and other conductors in subways, under streets, avenues, public parks and places in the city of New York for conducting and distributing electricity under the direction of the Board of Electrical Control," etc.

The West Side Electric Company subsequently obtained permits from the commissioner of water supply, gas and electricity to place two cables in the electrical subways of the respondent to be used for electric lighting purposes, and in June and December, 1903, exhibited such permits to the respondent and requested the respondent to open its manholes and service boxes so as to allow the installation of the appellant's cable in the subway. The respondent refused to comply with this request. It denied the right of the board of electrical control to grant a franchise to the appellant to operate electrical conductors in the streets of the city of New York and asserted that the only municipal authority having power to grant such a franchise on October 30, 1896, was the board of aldermen.

Under chapter 37 of the Laws of 1848, which was an act to authorize the formation of gas light companies, such corporations could acquire the power to lay conductors for conducting gas in the streets of a city, village or town only with the consent of the municipal authorities. Under chapter 512 of the Laws of 1879, which was an act to authorize gas-light companies to use electricity instead of gas, a similar consent of the municipal authorities was necessary to empower such corporations to occupy the streets of a city, town or village, with apparatus for electric lighting purposes. These provisions were incorporated into the Transportation Corporations Law (Laws of 1890, chap. 566, § 61) under which the appellant was organized. Subdivision 1 of section 61 empowers gas companies to manufacture, sell and furnish such quantities of gas as may be required in the city, town or village where the same shall be located ; " and to lay conductors for conducting gas through the streets, lanes, alleys, squares and highways in such cities, villages and towns, *with the consent of the municipal authorities thereof*," etc. This subdivision was under

consideration by this court in the case of *Ghee* v. *Northern Union Gas Co.* (158 N. Y. 510) presently to be discussed. Subdivision 2 of section 61 empowers a company incorporated for the purpose of using electricity for light, heat or power to carry on the business of lighting by electricity or using it for heat or power in cities, towns and villages within this state; " and to lay, erect and construct suitable wires or other conductors, with the necessary poles, pipes or other fixtures in, on, over and under the streets, avenues, public parks and places of such cities, towns or villages for conducting and distributing electricity, *with the consent of the municipal authorities thereof*, and in such manner and under such reasonable regulations as they may prescribe." The question is who were the municipal authorities in the city of New York whose consent was thus required at the time when the board of electrical control assumed to give such consent to the West Side Electric Company. The appellant contends that they were the members of the board of electrical control; the respondent insists that they were the board of aldermen.

We are of opinion that the board of aldermen were in 1896 the municipal authorities contemplated by the language which has been quoted from the Transportation Corporations Law. The giving of the consent prescribed by that statute is the grant of a franchise. The act of 1887 conferred no express power to grant such a franchise upon the board of electrical control nor are we able to discover that it was conferred by implication. That statute contained no enactment to the effect that the board of electrical control should be deemed to be the municipal authorities whose consent was made essential to the grant of a gas lighting or electric lighting franchise by the acts of 1848 and 1879 subsequently embodied in section 61 of the Transportation Corporations Law. The right to grant or withhold consent to the occupation of the streets of a municipality for electric lighting purposes is one thing; the right to regulate such occupation after consent is given is another. The act of 1887 was passed only in the exercise of the latter right. The purpose of that act seems to have

been to vest in the board of electrical control the amplest administrative authority to regulate the exercise of rights after they should have been acquired, but not to bestow upon the board any authority to participate in the creation of such rights. This function of supervision could be vested in the board by the legislature in the exercise of the police power. (See *People ex rel. N. Y. Electric Lines Co.* v. *Squire*, 107 N. Y. 593.) Beyond that the legislature did not attempt to go. It left the franchise-giving power delegated by the state just where it was before, in the hands of the same municipal authorities. This court decided in *Ghee* v. *Northern Union Gas Co. (supra)* that the municipal assembly constituted the municipal authorities whose consent was essential to confer a franchise upon a gas company in the city of New York under subdivision 1 of section 61 of the Transportation Corporations Law, and the reasoning in that case requires a similar conclusion as to who were the municipal authorities who must consent before an electric light company could in 1896 acquire the right under subdivision 2 of the same section to lay down its conductors within the limits of the city. The board of aldermen then possessed the powers which belonged to the municipal assembly in 1899 when the *Ghee* case was decided, and the consent of the board of aldermen was, therefore, requisite at that time under section 61 of the Transportation Corporations Law in order to confer upon a corporation a gas lighting or electric lighting franchise to be exercised by the occupation of any portion of the streets of New York.

It is not deemed necessary to repeat the arguments which led to the result reached in the *Ghee* case, many of which are equally applicable here.

We are asked to adopt the interpretation of the act of 1887, which would sustain the position of the appellant on the ground that for several years the statute was practically construed in accordance with that view by various public officers in the city of New York. It is to be noted, however, that these officers did not all agree that such was the correct construction. The language was not ambiguous nor

was the meaning doubtful when other legislation on the same subject-matter was taken into consideration. There is no room for the application of the doctrine of practical construction in the case of a statute free from ambiguity or not subject to any reasonable doubt as to the meaning of its provisions, particularly when these are considered in the light of contemporaneous legislative enactments in *pari materia.* " Where no ambiguity or doubt appears in the law we think the same rule obtains here as in other cases, that the court should confine its attention to the law and not allow extrinsic circumstances to introduce a difficulty where the language is plain." (Cooley's Const. Limitations [6th ed.], p. 84.)

Basing our conclusion on the language of the various statutory provisions involved as well as on the authority of *Ghee v. Northern Union Gas Co. (supra),* we think that the judgments below were right and should be affirmed, with costs.

CULLEN, Ch. J., EDWARD T. BARTLETT, HAIGHT, VANN and CHASE, JJ., concur; O'BRIEN, J., absent.

Judgment and order affirmed.