(69 Misc. Rep. 200.)

## In re NEW YORK ELECTRIC LINES CO.

(Supreme Court, Special Term, New York County. October, 1910.)

ELECTRICITY (§ 4*)—ELECTRIC COMPANIES—FRANCHISES—"COMPETENT TO MANUFACTURE OR SUPPLY ELECTRICITY."

The consent of the city of New York to the use of its streets by a corporation using lines of electric conductors to be placed underground is not a contract with the corporation, or a property right, which the city may not take without compensation, until the consent has been acted upon and subways have been constructed; and where the consent has been revoked before using, the corporation is not "competent to manufacture or supply electricity," within Laws 1887, c. 716, § 7, and is not entitled to mandamus under such chapter.

[Ed. Note.—For other cases, see Electricity, Dec. Dig. § 4.*]

Application of the New York Electric Lines Company for writ of mandamus to the Empire City Subway Company, Limited. On motion to strike out certain allegations from moving papers. Application and motion denied.

Order affirmed 125 N. Y. Supp. 1133.

Alton B. Parker, Henry A. Gildersleeve, Alexander S. Bacon, Jerry R. Wernberg, and J. Aspinwall Hodge, Jr., for applicant.

Edmund L. Mooney, John H. Cahill, Frederick A. Card, and Charles T. Russell, for respondent.

BISCHOFF, J. Asserting its "lawful power" to operate telegraph and telephone conductors in any street in the borough of Manhattan, city of New York, the applicant seeks a peremptory writ of mandamus to compel the respondent, the Empire City Subway Company, to accord and provide space in its subways for electrical conductors desired by the applicant to be installed for its use. Upon an earlier application for a writ of mandamus, to enforce an alleged right in the applicant to open the surface of the streets to build subways of its own (People ex rel. N. Y. El. Lines Co. v. Ellison, 51 Misc. Rep. 413, 101 N. Y. Supp. 444; Id., 115 App. Div. 254, 101 N. Y. Supp. 55; Id., 188 N. Y. 523, 81 N. E. 447), the facts with respect to the corporation's continued right to the enjoyment of its franchise were presented to the court, and the matters set forth in the published opinions in that proceeding are again alleged. The relief asked at that time was refused upon the ground that, assuming the continued effectiveness of the applicant's corporate charter and that the franchise or permission granted by the municipal authorities in the year 1883 was irrevocable, the state had none the less taken away by competent legislation the applicant's right to build its own subways.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

For the purposes of the present motion, the applicant must establish its "lawful power" to operate its wires within the city; such being the term used in the contract made between the municipality and the respondent, with legislative approval (Laws 1891, c. 231), and the right to relief by mandamus, where the respondent refuses subway space, is afforded to a corporation "lawfully competent to * * * use or supply electricity or to operate electrical conductors in any street, avenue or highway, in the city of New York." Laws 1887, c. 716, § 7. There is thus presented the question whether the applicant has disclosed a legal right to operate wires for telegraph and telephone service within the city, beyond any actual dispute of fact affecting the existence of that right; since a peremptory, not an alternative, writ is sought.

So far as there is dispute as to the applicant's continued corporate existence, because of an alleged nonuser of its franchise, I have no doubt that, as between these parties, the question does not actually arise. Whether or not the state has ground for declaring the charter forfeited, no forfeiture has been declared, and the applicant's right to exist or to use such franchise as remains to it, because not actually taken away, cannot well be assailed. But the franchise to operate wires within the city was not complete without a consent upon the part of the municipal authorities. This consent was an essential condition of all the legislation upon the subject, including the act under which the applicant was incorporated (People ex rel. West Side El. Co. v. Consolidated Sub. Co., 110 App. Div. 171, 96 N. Y. Supp. 609; Id., 187 N. Y. 58, 79 N. E. 892), the existence of which condition is open to litigation between the present parties (Id.). The permit from the department of water supply, gas, and electricity, which the statute requires, and which may be granted after space is provided in the subways (Matter of Long Acre El. L. & P. Co., 188 N. Y. 361, 389, 80 N. E. 1101), is not the consent of the municipal authorities (People ex rel. West Side El. Co. v. Con. Sub. Co., supra); and this applicant's right—its "lawful power," upon which the present motion depends—must rest upon the continued effectiveness of the consent of the board of aldermen given in 1883.

Upon the previous motion for mandamus, which was denied upon the ground that, whatever the contract rights of the applicant, it was within the power of the Legislature to forbid the construction by it of its own subways, I assumed for argument, when discussing the question in the opinion filed, that this consent by the board of aldermen was irrevocable upon the part of the municipality. The point, however, was not decided. 51 Misc. Rep. 416, 101 N. Y. Supp. 444. The Court of Appeals likewise stated its argumentative assumption of this point favorably to the applicant, when affirming the affirmance by the Appellate Division of my order. 188 N. Y. 527, 81 N. E. 447. In the course of the opinion rendered by the Appellate Division, however, this question was directly considered, and an opinion expressed upon the merits, in the language of Mr. Justice Ingraham (115 App. Div. 263, 101 N. Y. Supp. 55), as follows:

"To constitute a contract between the city of New York and the relator, I think something more must exist than the mere granting to the relator permission to use its streets. No franchise was granted by the city of New.

York. The franchise, if any, was granted by the state. Undoubtedly, when the consent of the city was given, if that consent had been acted upon and the subways constructed, a property right would have been acquired which the city could not take without compensation; but where, under these statutes, a mere right is given, subject to the consent of the city, the consent of the city itself grants no franchise or creates no contract until it is acted on by the grantee. This consent is spoken of by the learned counsel for the relator as a grant from the city. The statute (Laws of 1881, c. 483, amending Laws 1879, c. 397, § 1) provides that 'any company or companies organized and incorporated under the laws of this state * * * are hereby authorized, from time to time, to construct and lay lines of electrical conductors under ground in any city,' etc., 'provided that such company shall, before laying any such line in any city, village or town of this state, first obtain from the common council * * * permission to use the streets within such city, village or town for the purpose therein set forth.' On April 10, 1883, the board of aldermen of the city of New York passed an ordinance which provided 'that permission be and hereby is granted to the New York Electric Lines Company to lay wires or other conductors of electricity in and through the streets, avenues and highways of New York City, to make connections of such wires or conductors underground by means of the necessary vaults, test boxes and distributing conduits.' The relator gets its right to use the streets from the state. But that right does not accrue until the municipal corporation gives permission. When that permission is once given, then the right is complete. But it cannot be that a municipal corporation, having given its permission, is bound hand and foot, so that the permission can never be revoked, although the corporation neglects to act under it and construct its lines for such a period as would divest a person of real property by adverse possession. All of the elements of a contract are wanting. The relator assumed no obligation whatever in relation to the construction of the subway. All it ever agreed to do was that, when it built the subway, it would comply with the conditions imposed. Until the permission granted was accepted by some act of the corporation under it, I think there was no contract. If the relator had agreed to construct these subways within a specified time, a different question would have been presented; but in all the cases where these grants of franchises have been held irrevocable it was because there was an obligation to construct the thing granted or the grantee had acted under the grant and had constructed it. In those cases a consideration would be apparent. The relator had not acted under the permission granted by the common council."

From the papers now before me it appears that the city has revoked the consent given in the year 1883; and, according to the law as expressed by the court of next resort, with respect to the character of this very consent, the revocation was within the power of the city to accomplish under conditions which are presented by the facts alleged. This is not a collateral fact for adjudication. The question is not what the city might have done, or might still do, upon application to the courts. The act of revocation is a fact. If performed with power, that act put an end to the operative character of the applicant's franchise, and the question of validity is one of law, a question upon which judicial opinion, binding upon this court, has been expressed by the court of review. The applicant's right to a writ of mandamus depends, as I have noted, upon its "lawful power," or upon its being "lawfully competent," to operate its wires under the city's streets. To be thus qualified it must assert a consent from the city, and must tender an issue as to whether that consent exists. If once given, but revocable in law and revoked in fact, the consent does not exist; and

an issue is thus raised upon a point vital to the legal right sought to be enforced.

The motion for a peremptory writ of mandamus must therefore be denied.

There are before me three motions by the respondent to strike out allegations from the moving papers, on the ground that the matters alleged are irrelevant, or are so set forth as to present the affiants' conclusion of facts, or to relate to facts not within the knowledge of the affiants. The matters sought to be stricken out as irrelevant have to do with the history of the applicant's organization and activities, and bear upon the question of good faith, which is involved in every application for a writ of mandamus. The facts cannot be deemed irrelevant, in view of the long period which has intervened between the applicant's organization and the present motion, with the inference of laches in the absence of any explanation. So far as the form of the averments is called in question, it is to be noted that moving papers for a writ of mandamus are in the nature, not only of a vehicle of proof (Code Civ. Proc. § 2070), but of a pleading containing issuable allegations of ultimate facts (Moses on Mandamus, p. 205). Conclusions of fact and statements not necessarily within the affiant's knowledge may thus be stated as defining an issue tendered. Some further proof may be looked for to support these ultimate statements, if the relator or applicant is to take a writ pro confesso (People ex rel. Bourke v. Grout, 107 App. Div. 228, 229, 94 N. Y. Supp. 1101); but, whether that proof be elsewhere presented or not, the allegations cannot be stricken out.

Examining all the avements to which these motions are directed, I fail to find any substantial ground for holding that the respondent may be prejudiced by their retention as part of the moving papers; and the motions to strike out are therefore denied, with costs.

Motions denied, with costs.