Arthur Markewich, J.
Petitioner Roosevelt Raceway, Inc., proceeds under article 78 of the Civil Practice Act to compel respondent State Harness Racing Commission to correct its records and to grant certain financial credits.
On June 5, 1956, after hearings, respondent issued a capital improvement license and construction permit to petitioner, conditioned upon completion of the capital improvement described in petitioner’s application made pursuant to chapter 837 of the laws of that year. This new section (Pari-Mutuel Revenue Law [L. 1940, eh. 254, as amd.], § 45-a) was designed to increase attendance at harness race tracks, thereby increasing the revenue to the State flowing therefrom. Machinery was set up thereby under which a track desiring to make such capital improvement would apply to the commission for approval thereof and, upon a finding made by the commission after hearings that such improvement would improve racing, promote the public’s safety, comfort and convenience and add to the State’s revenues, the commission would issue its license and permit therefor. The inducements to the track to make such an improvement lay in a provision for so-called “construction accounts” (special bank accounts) of track revenues which would be permitted to be transferred to general funds until the cost of the improvement had been reimbursed to the track. The commission was empowered in this connection to fix the cost of any such improvement and the date of its completion. The language important to the issue before the court is found in subdivision 10, which provides for payments of moneys from construction accounts to general funds 4 4 from the date of the completion of any capital improvement with the approval of the state harness racing commission until such date as the amounts paid to such harness race track from the construction account, less income taxes paid thereon to the United States by such harness race track, equals the cost of the capital improvement as determined by the state harness racing commission.” Further it is stated: “In determining the amount of taxes paid by any such harness race track to the United States in any calendar year it shall be deemed that said amounts were taxed at the highest rates actually paid to the United States by such harness race track for the particular year involved.”
Petitioner had proposed in its application to pay for the projected improvement from its own funds plus a $10,000,000 mortgage loan, and, upon receiving authorization to make the *778 improvement, petitioner did borrow such sum, and proceeded with the work. On December 23, 1957 the commission made a finding that petitioner had completed the authorized improvement .on August 1, 1957, and also found actual cast of the construction to be $19,.605,281.92 (later reduced, at petitioner’s request, to $19,517,469.92) • By reason of the foregoing, petitioner claims the right to take payments from its construction account until the amounts paid to it therefrom “less income taxes paid thereon to the United States ’ ’ equal the said amount of cost of its capital improvement as it was determined by the commission.
Jn 1957 petitioner deposited $2,858,495.38 in its construction account which, on December 27, 1957, was transferred, with the commission’s approval and countersignature, from the construction account to petitioner’s general funds.
Petitioner’s income tax payments to the United States for 1957 totalled $2,060,,090.73, of which $1,404,664.63 .constituted the tax on the $2,858,495.38 received by petitioner from its construction account- Petitioner notified the commission of said tax payment of $1,404,664.63 to the United States and demanded that the commission credit the balance due petitioner from construction account moneys with said amount in accordance with the above-quoted provisions of subdivision 10 of the 1956 law.
By letter dated December 29, 1958, the commission refused to credit the balance due petitioner with such Federal income tax payments, and set forth an analysis of the capital improvement cost account of petitioner “ as reflected on the Commission records ’ ’ which did not include any credit for the Federal income tax payment referred to. Such disallowance was stated to be in accordance with an opinion of the Attorney-General.
In its annual report to the Secretary of State for 1958, submitted February 3, 1959., the commission reiterated its dis-allowance of credit for Federal income tax payments. A chart annexed to that report failed to give credit for any Federal income tax payments by petitioner, or indeed by any harness tracks, on moneys transferred from construction accounts to general funds, stating, in part, that “ the Commission has disallowed any credits to pari-mutuel harness tracks for reimbursements of federal income tax payments.”
Petitioner instituted this proceeding on April 17, 1959 seeking an order directing the commission (1) to correct its records so as to credit the balance due petitioner from its construction accounts with the sum of $1,404,664.63, the tax paid to the United States in 1958 upon sums previously transferred from its construction account to its general funds; (2) t.o correct and *779 amend its report to the Secretary of State covering the year 1958 so as to reflect that credit; and (3) to credit sums representing Federal income taxes thereafter actually paid by petitioner on any additional sums transferred from its construction accounts to its general funds.
The commission did not answer but moved instead, under section 1293 of the Civil Practice Act, to dismiss the petition as failing to allege facts sufficient to entitle petitioner to any relief, and because the Tax Commission, and not the respondent commission, was the only proper party. The motion to dismiss was denied, and it thereupon applied for leave to appeal, which was granted, but the Appellate Division affirmed the decision below and directed an answer (17 Misc 2d 1065, affd. 9 A D 2d 621).
While the appeal was pending, the Legislature was convened in a one-day Extraordinary Session on July 1, 1959, and passed chapter 881 of the Laws of 1959, which became law by the Governor’s signature.
The 1959 law (ch. 881, § 7) purported to amend subdivision 10 of the 1956 law so as to delete the references to credit for Federal income taxes above quoted, substituting therefor the following: “No harness race track shall be reimbursed for any income taxes paid to the United States with respect to any payments heretofore or hereafter made to such harness race track from the construction account.”
A statement of intent was added (L. 1959, ch. 881, § 10): “It is the intent of the legislature * * * to clarify what was its intent in relation to the reimbursement of any income taxes paid to the United States with respect to any payments made to any harness race track from a construction account, and it is the further intent of the legislature hereby to provide that no harness race track shall be reimbursed from the construction account for any income taxes paid by such harness race track to the United States, whether paid before or after the effective date of this section.”
The answer interposed by order of the Appellate Division quotes the provisions of the 1959 law and denies those allegations of the petition which assert that the commission’s ruling of December 29,1958 erroneously construed the 1956 law. Further, the answer denies the allegation that the commission threatens to continue to violate petitioner’s rights. It is then said, by way of affirmative defense, that the determination of the commission, denying credit to petitioner for Federal income taxes paid by petitioner on moneys transferred from petitioner’s construction account to its general funds, ‘ ‘ was required by the *780 provisions of subdivision 10 of section 45-a of the Pari-Mutuel Revenue Law as that subdivision read prior to July 1, 1959, and that such subdivision 10, as clarified by L. 1959, ch. 881, expressly bars any reimbursement to petitioner for federal income taxes paid by petitioner on moneys heretofore or hereafter transferred from petitioner’s construction account to petitioner’s general funds.”
There is no issue here as to whether the capital improvement completed by petitioner meets the statutory requirements of the 1956 law, nor as to whether petitioner has a right to receive payments from its construction account, for the commission has expressly determined, and concedes, that the petitioner’s capital improvement met such requirements. The commission does contend that its determination denying credit to petitioner for Federal income taxes paid or to be paid by petitioner on moneys received from petitioner’s construction account was required by the 1956 law. Further, says the commission, by reason of the 1959 law, the petitioner has no right to credit for its Federal income tax payments upon moneys received from its construction account.
Petitioner contends, however, that it is entitled to such credits despite the 1959 law because the declaration of the 1959 law as to the meaning of the 1956 law is erroneous, and is ineffectual against the clear language and contrary meaning of the 1956 law, and because the 1959 law, in any event, cannot be construed to deprive tracks which had completed capital improvements under the 1956 law of the payments to which that law entitled them, because it was not so intended, and also because, if so construed, it would be unconstitutional.
The language of the 1956 law is clear and unequivocal. It means and can only mean what it plainly says: that approved-capital-improvement tracks are to receive reimbursement for the sums spent on construction plus the Federal income tax paid on such sums. The idea is to make the tracks whole for the costs of construction. To hold otherwise is, for instance, to say that the very last sentence of subdivision 10 (1956 law) is a completely meaningless tag.
The commission proceeded, in making its ruling, to act as if there were no reference in the 1956 law to include taxes. This is error. “It is well settled that in the interpretation of a statute we must assume that the Legislature did not deliberately place a phrase in the statute which was intended to serve no purpose (Matter of Zellner [Brooklyn Trust Co.], 299 N. Y. 243, 247; People v. Dethloff, 283 N. Y. 309, 315), and each word must be read and given a distinct and consistent meaning (New *781 York State Bridge Auth. v. Moore, 299 N. Y. 410, 415-416; Palmer v. Van Santvoord, 153 N. Y. 612, 616).” (Matter of Smathers, 309 N. Y. 487, 495.)
The 1956 law is entirely free of ambiguity, and the intention of the Legislature, as plainly expressed in the statute, must be effectuated without regard to the opinion of any public officer or body. “ There is no room for the application of the doctrine of practical construction in the case of a statute free from ambiguity”. (People ex rel. West Side Elec. Co. v. Consolidated Tel. & Elec. Subway Co., 187 N. Y. 58, 67.) Nor can the statement of intent (L. 1959, ch. 881, § 10) “clarify” the picture. Even a casual reading of the 1959 amendment demonstrates that the 1959 Legislature did not “clarify” the 1956 Legislature’s intent; it changed it, and it was without power to do so by the device of interpretation. “ Doubtless the legislative construction of the earlier statute is without binding force in any judicial proceeding.” (City of New York v. Village of Lawrence, 250 N. Y. 429, 447.)
The so-called clarification flies in the face of the statute it purports to clarify. The intention of the 1956 law is so clearly the opposite of what the 1959 law says it was that the 1959 law cannot be given effect retroactively. This court, considering the 1956 law by itself, must conclude that the intention of the Legislature was to give credit for Federal income taxes paid. The 1959 law cannot, therefore, change the intent of the 1956 law. “ It is, of course, true that the Legislature cannot come back a year later and by a new law, control the interpretation of the law it passed a year earlier.” (Matter of Chatlos v. McGoldrick, 302 N. Y. 380, 388.) Furthermore, the 1956 law was intended to and did induce action by tracks, which action was and is beneficial to the State. Petitioner, in reliance on its provisions, took action at great expense, after obtaining express permission from the proper authority, the commission, to do so. It is too late now for another Legislature, by excising language from the 1956 law and substituting other provisions, to cut out part of the promised benefits to petitioner under the guise of “ clarification ”. What has been attempted here by the enactment of the 1959 law is to take from the courts of New York, in the midst of a judicial proceeding therein pending, the determination of the meaning of a statute enacted three years before. The attempt is unsuccessful. The 1956 law was a promise by the State to induce tracks to take action beneficial to both. The State made this promise to harness race tracks to induce them to modernize their plants in order that the State might obtain greater revenues from increased attendance and from its share *782 of the larger sums which would be bet by the greater number of people who would attend. Petitioner followed the procedure set forth in the 1956 law: it applied for and received a construction permit from the commission, which made the required findings that the capital improvement would add to the revenues of the State, improve racing, and promote the comfort, safety and convenience of the public. In reliance upon the consideration promised by the 1956 law, petitioner built the authorized improvement, incurring debt, and expending many millions of dollars so to do. Finally, after petitioner had completed its new track, the commission made a finding, following the procedure set forth in the 1956 law, that the construction had been completed at a cost of over $19,500,000. Petitioner thus became entitled to recover moneys from the construction account in accordance with the terms of the 1956 law. A contract is created by action induced by or in reliance on State legislation. ‘ ‘ When the state through its legislature grants a * * * privilege * * * to a corporation either in the act incorporating it, or by other legislation followed by action of the corporation under or in reliance upon the grant so made, it constitutes a contract, based on a valuable consideration, the obligation of which cannot be impaired by subsequent legislation." (People ex rel. New York Cent. & H. R. R. R. Co. v. Mealey, 224 N. Y. 187, 196-197, affd. 254 U. S. 47.)
By its investment of large sums and its erection of a new and greatly enlarged track pursuant to the 1956 law, petitioner accepted the State’s offer that, if it made such a capital improvement, it would receive payments from the construction account until it had recovered its expenditures, net after taxes. Its right to receive such payments is protected against subsequent revocation (Russell v. Sebastian, 233 U. S. 195; New York Elec. Lines Co. v. Empire City Subway Co., 235 U. S. 179; American Smelting Co. v. Colorado, 204 U. S. 103; Danolds v. State of New York, 89 N. Y. 36).
Application granted. Settle order.