THE   HAUCK   FOOD   PRODUCTS   CORPORATION,   Plaintiff,   *v.*
B. A. STEVENSON & Co., INC., Defendant.

Supreme Court, Ulster Trial Term, January, 1922.

Contracts — in what sense promise interpreted — sales — counterclaim —
claim arising out of another contract which under its terms plaintiff
had " closed " because of insolvency of other party — contract construed
in sense understood by plaintiff — inference that insolvent party had
reason to suppose plaintiff's construction was right.

Where a promise admits of more senses than one it must be interpreted in that sense
in which the promisor had reason to suppose it was understood by the promisee.

In an action for goods sold and delivered the only issue litigated was in relation
to a counterclaim arising upon a demand growing out of a contract for the sale
of oil made between plaintiff and a corporation other than defendant, which
claim prior to the commencement of the action had been assigned to defendant
by federal receivers appointed in an action against the other party to the contract
brought by one claiming to be a creditor. The oil contract, the terms of which
were net cash with sight draft against bill of lading, with certificates of weight
and analysis, contained the following provision in printed form: " If before
the completion of the contract either party thereto shall suspend payment or
become bankrupt or insolvent, the other party, upon notice being given to the
defaulter, shall close the contract forthwith, any difference to be for the account
of the defaulter." Under said provision of the contract and in view of section
156 of the Personal Property Law, the other party to the contract on the day of
the appointment of the federal receiver suspended payment and became insolvent.
Several days later a shipment of oil under the contract arrived at Kingston,
N. Y., the place of business of defendant, and a sight draft on plaintiff for the
amount which a New York bank, a few days prior to the appointment of the
receivers, had advanced to the other party to the oil contract upon taking over
the bills of lading, was with bill of lading attached forwarded to a Kingston
bank. The plaintiff's attention was called to the sight draft. A letter from
defendant referring to the quoted provision of the contract informed the other
party thereto, which had prepared it, that under said provision the plaintiff
was now free to close the contract. After the draft had been refused and the
papers had been returned to the forwarding bank they were returned to the
Kingston bank and presented to plaintiff which refused to accept the draft
and it was again returned to the forwarding bank which resold the oil, and for
the amount of the balance claimed to be due on account of the transaction
defendant counterclaims. Upon directing judgment for the amount demanded
by the complaint, *held*, that the language of the quoted clause of the contract
showed that it was intended to provide for both parties.

Upon the insolvency of one party to the contract the plaintiff was the " other
party " which had the right to terminate the contract forthwith by notice to
the other party to the contract.

Such construction of the contract is in keeping with what plaintiff understood it
to mean at the time of its submission, and that construction should control,
especially since from the language used it was a fair inference that the party
which became insolvent had good reason to suppose that plaintiff at the time of
the submission of the contract to it so understood and considered it.

ACTION brought to recover $1,610, and interest from December 8,
1920, on account of the sale and delivery of certain goods to the
defendant in the nature of a salad cooking oil, known as " Salanut."
The answer does not raise any issue as to the allegations of the

complaint, but pleads a counterclaim wherein the defendant seeks to recover from the plaintiff the sum of $3,370.91, on account of contract for the sale of certain Manchurian Soya bean oil claimed to have been made by E. F. Drew & Company, Inc., to the plaintiff, and which claim was assigned by the receivers of E. F. Drew & Company, Inc., to the defendant. The plaintiff by its reply raises issue as to the defendant's counterclaim.

*Walter N. Gill*, for plaintiff.

*Root, Clark, Buckner & Howland*, for defendant.

*Franc & Becker* (*Alfred Becker*, of counsel), for defendant.

ROSCH, J. The issue litigated in this action was in relation to the defendant's counterclaim. There is no question but that the defendant purchased from the plaintiff, some time in the month of November, 1920, a bill of goods for which it agreed to pay $1,610. Having failed to pay the same, the plaintiff commenced this action about the 25th day of January, 1921, against the defendant to recover the amount due. Subsequent to the sale of goods by the plaintiff to the defendant, and on or about the 4th day of January, 1921, the defendant claims to have acquired, by assignment, from the receivers of E. F. Drew & Company, Inc., a claim and demand against the plaintiff growing out of a certain contract dated September 23, 1920, made between the said E. F. Drew & Company, Inc., and the Hauck Food Products Corporation, for the sale by E. F. Drew & Company, Inc., to the plaintiff of two tanks of Soya bean oil of about 60,000 pounds each. The only question to be determined in this case is the liability of the plaintiff to the defendant, on account of such assigned cause of action.

The contract referred to between E. F. Drew & Company, Inc., and the Hauck Food Products Corporation appears to have been a contract prepared by Drew & Company and submitted to the plaintiff for its acceptance. Part of the contract is typewritten and part printed, and one of the conditions of the same is as follows: " If before the completion of the contract either party thereto shall suspend payment or become bankrupt or insolvent, the other party, upon notice being given to the defaulter, shall close the contract forthwith, any difference to be for the account of the defaulter."

It appears that on the thirtieth day of October, by the United States District Court for the Southern District of New York, Max Lowenthal and Henry S. Fahrleigh were appointed receivers of E. F. Drew & Company, Inc., and ordered to take possession of all and singular the property, business assets and effects of the said corporation. The appointment was made in an action entitled

" Sumner N. Samuels, Plaintiff, against E. F. Drew & Company, Inc., Defendant." Such action was brought by Samuels claiming to be a creditor. The bill of complaint was verified on the 30th day of October, 1920, and on the same day the defendant in that action, E. F. Drew & Company, Inc., interposed an answer, verified on that day, whereby it admitted the truth of the allegations set forth in the bill of complaint. One of the allegations in the bill of complaint was: " That the defendant company is unable to pay, as they mature, the debts due and presently falling due upon said floating debt as aforesaid. The defendant company is also unable to pay, as they mature, claims of various individuals, firms, and corporations for merchandise purchased, and for labor, services, etc." Another allegation in the bill of complaint was " that by reason of the extraordinary financial conditions due to readjustment ensuing upon the termination of the war, the defendant corporation is unable to provide for the payment of its obligations and debts now maturing or about to mature, or to convert presently sufficient of its assets to secure the funds necessary for the prosecution of the present conduct of its business." From the allegations of the bill of complaint which were admitted by E. F. Drew & Company, Inc., as well as by the order appointing the receivers, it appears that E. F. Drew & Company, Inc., did suspend payment and become insolvent.

Section 156 of the Personal Property Law, subdivision 3, provides as follows: " A person is insolvent within the meaning of this article who either has ceased to pay his debts in the ordinary course of business or cannot pay his debts as they become due, whether he has committed an act of bankruptcy or not, and whether he is insolvent within the meaning of the federal bankruptcy law or not."

Under the above-quoted provision of the contract between the Hauck Food Products Corporation and E. F. Drew & Company, Inc., and in view of the provisions of the Personal Property Law, E. F. Drew & Company, Inc., on the 30th day of October, 1920, suspended payment and became insolvent.

On or about the first day of November, a tank of Soya bean oil, shipped to E. F. Drew & Company, Inc., arrived at Kingston, the place of business of the defendant. Such shipment was made under the contract in question and sight draft with bill of lading attached was forwarded by the Mechanics and Metals National Bank of New York to a bank at Kingston. The draft was drawn on the plaintiff for $6,350. That amount had been advanced by the Mechanics and Metals Bank to E. F. Drew & Company, Inc.,

on October 26, 1920, when it took over the bill of lading. The plaintiff's attention was called to the sight draft and bill of lading and on November 4, 1920, the defendant wrote and caused to be sent to E. F. Drew & Company, Inc., 50 Broad street, New York city, a letter referring them to the contract of September 23, 1920, covering two Sellers tanks pressed Manchurian Soya bean oil, for October shipment from the Pacific coast. This letter referred to above-quoted portion of contract, and informed Drew & Company that under that clause the plaintiff was now free to close the contract. The draft was refused and papers returned to the forwarding bank. Subsequently and on or about November 10, 1920, the papers were returned to the bank at Kingston and presented to the plaintiff, which refused to accept the draft and the same was returned again to the Mechanics and Metals Bank in New York. The Mechanics and Metals National Bank subsequently disposed of the oil and on account thereof received $4,127.50, leaving a balance of $3,370.91, claimed due by the bank from E. F. Drew & Company, Inc., on account of the transaction. It is such amount ($3,370.91) for which claim is made by defendant.

In view of the determination arrived at, it is not necessary to pass upon the measure of damages or extent of the claims growing out of the alleged breach by the plaintiff of the contract of September 23, 1920. It would not, however, be anything but the difference between the contract and market value of the product on the date of original refusal. It could not be within the power of the forwarding bank to hold the product about a month and then seek to charge all the additional expenses as contended.

The contract of September 23, 1920, provided that the sale should be made for terms of net cash, with sight draft against railroad bill of lading, with certificate of weight and certificate of analysis. The receivers, by letters and telegrams of November 8, 1920, attempted to enforce acceptance of the shipment of oil by the plaintiff, contending that the clause in the contract referred to in no wise affected the contract relationship, and that the shipment and draft in due course should have been presented before the date of receivership. The receivers attempted to adopt the contract by an order of January 26, 1921. This was after the forwarding bank had ordered the goods resold, and they had been disposed of. It was also subsequent to the assignment of January 4, 1921, of the cause of action to the defendant.

The Hauck Food Products Corporation claimed the right to close and cancel the contract under the provisions of the contract hereinbefore quoted. It so contended at the time of the trial.

If it had such right, then its exercise of the same cannot be questioned. To determine that question, it requires a construction of the contract. From its first reading it does not seem to present any question. The defendant, however, argues with some ingenuity that it does not permit the plaintiff to do that which it claimed the right to do. The clause is presumed to mean something. Its language shows that it was intended to provide for both parties to it. It could hardly be urged that it did not mean anything for the benefit of the plaintiff and much for E. F. Drew & Company, Inc. If the argument of the defendant is accepted, that would, however, be the construction.

The clause to be construed was in printed form and prepared by E. F. Drew & Company, Inc., the receiver of which assigned the claim to the defendant. In its construction the language used is to be considered the language of E. F. Drew & Company, Inc., as it was their own form of contract. In case of doubtful meaning the interpretation should be against the person who proposed it rather than the person invited to accept it. *Gillett* v. *Bank of America*, 160 N. Y. 549, 555; *Industrial & General Trust, Ltd.*, v. *Tod*, 180 id. 215, 225; *White* v. *Hoyt*, 73 id. 505, 511.

In order to analyze the meaning of the contract, no harm will be done in determining what it imports, by taking up its separate phrases and clauses and applying the significance which would ordinarily be applied in their use. " If before the completion of the contract " would mean before the goods had been delivered by the seller and accepted by the buyer and paid for. It means before consummation. " Either party thereto " would mean Drew & Company or Hauck Food Products Corporation. " Shall suspend payment, or become bankrupt or insolvent " has been defined by the statute before quoted. " The other party " means the party other than the bankrupt or insolvent party. " Upon notice being given to the defaulter " means notice being given to the one who has suspended payment, become bankrupt or insolvent. " Shall close the contract forthwith " means to terminate or end the contract. It could be terminated by notice as provided and as done here. " Any difference to be for the account of the defaulter " could only mean any difference in its favor.

The defendant urges that this contract has been construed to mean other than as above construed. The case of *Matter of Lowenthal*, 199 App. Div. 39, recently decided by the Appellate Division, first department, merely holds that the arbitration clause of a contract could be enforced upon application of a receiver. The dispute as to a rescission or termination of the contract could be passed upon and determined by the arbitration committee. **In**

the case under consideration we have the question presented whether " close " in the event of suspension of payment, bankruptcy, etc., does mean to end and terminate. Webster Int. Dict.; Century Dict.; 6 Am. & Eng. Ency. of Law (2d ed.), 146. It cannot have a forced technical meaning never contemplated or in any way assumed by the plaintiff, but the meaning which would ordinarily be accepted by lexicographers and law writers.

The only fair construction of the contract is the one placed upon it by the Hauck Food Products Corporation, at the time of Drew & Company's insolvency. Such construction is in keeping with what the plaintiff understood the contract to mean at the time of its submission and that is the construction which should control, especially since the language used was such that it is a fair determination that Drew & Company had good reason to suppose that the Hauck Food Products Corporation at that time so understood and considered it.

As stated in the case of *White* v. *Hoyt*, 73 N. Y. 511: " The rule in ethics is, that when the terms of a promise admit of more senses than one, the promise is to be performed in that sense in which the promisor apprehended at the time the promisee received it and this is the established rule at law, as well as in morals. In the language of the books, it is to be interpreted in the sense in which the promisor had reason to suppose it was understood by the promisee. *Hoffman* v. *Ætna F. Ins. Co.*, 32 N. Y. 405; *Johnson* v. *Hathorn*, 2 Abb. Ct. App. Dec. 465; *Barlow* v. *Scott*, 24 N. Y. 40; *Howatt* v. *Lord Londesborough*, 3 E. & B. 307; *Potter* v. *Ontario Ins. Co.*, 5 Hill, 147."

There were certain rights the plaintiff had in the contract of September 23, 1920. It was one of the parties to the contract. It was " the other party " who had the right to give notice to E. F. Drew & Company, Inc., when it became insolvent. If the plaintiff had accepted the draft, and instead of there being 63,500 pounds of Soya bean oil there had been only half that amount; and, if in place of the fair, average quality pressed Manchurian Soya bean oil, as contracted to be sold, there had been poorest quality, then the rights of the Hauck Food Products Corporation would have been very materially affected if they had attempted to enforce their obligation against the bankrupt corporation or the receivers thereof. To protect itself against any such contingency " before the completion of the contract " the plaintiff had the right to close and terminate forthwith. If plaintiff was bound to accept the goods, then it would carry out and consummate the contract, and the clause quoted would have meant nothing.

The plaintiff had a right to end its contract with E. F. Drew &

Company, Inc., under the provisions of the contract quoted, and is entitled to recover judgment for the amount demanded in the complaint, with costs.

Judgment for plaintiff.