JANET FOSDICK, Respondent, *v.* INVESTORS SYNDICATE, INC., Appellant.

(Argued November 26, 1934; decided December 31, 1934.)

*Walter C. Lundgren, Reuben B. Crispell, Arthur H. Dean, C. Harold Taylor* and *William Leo Mulry* for appellant. The administrative construction by the Superintendent of Banks that defendant did not come within the purview of the Banking Law (Cons. Laws, ch. 2) is to be followed under the well-established doctrine of the administrative construction of statutes. (*City of New York* v. *New York City Ry. Co.,* 193 N. Y. 543; *Story* v.

*Craig*, 231 N. Y. 33; *People* v. *Durkee*, 189 App. Div. 276; *Adamson* v. *Schreiner*, 176 App. Div. 95; *Matter of Armitage* v, *Board of Education*, 122 Misc. Rep. 586; *McLaren* v. *Fleischer*, 256 U. S. 477; *Bodine & Clark Livestock Commission Co.* v. *Great Northern Ry. Co.*, 63 Fed. Rep. [2d] 472; *Huntsville Trust Co.* v. *Noel*, 321 Mo. 749; *Whitebird* v. *Eagle-Picher Lead Co.*, 40 Fed. Rep. [2d] 479; *United States* v. *Chicago, N. S. & M. R. R. Co.*, 288 U. S. 1.)

*Herman Kahn* and *Matthew M. Black* for respondent. It is the definite and settled public policy to confine the business of banking and investment companies strictly and solely to corporations which obey the prohibitions and safeguards prescribed by the Banking Law. And contracts and transactions of companies which have not complied with these requirements are illegal and void, may not be enforced by the wrongdoer, and may be rescinded by the innocent party. (*New York State Loan & Trust Co.* v. *Helmer*, 77 N. Y. 64; *Chapman* v. *Lynch*, 156 N. Y. 551; *Meserole Securities Co.* v. *Cosman*, 253 N. Y. 130; *Phillips* v. *Investors Syndicate*, 145 Misc. Rep. 361; *Noble State Bank* v. *Haskell*, 219 U. S. 104.) Even though the Banking Law may not employ the specific words " void " or " illegal," nevertheless the definite provisions and prohibitions thereof and of the Penal Law and the public policy which inspired the same render all contracts and transactions void and illegal which are entered into by corporations who are not licensed and have not complied with the law. (*Barton* v, *Port Jackson & Union Falls Plank Road Co.*, 17 Barb. 397; *Swing* v. *Dayton*, 124 App. Div. 58; *White* v. *Franklin Bank*, 39 Mass. 181; *Tracy* v. *Talmage*, 14 N. Y. 162; *Urwan* v. *Northwestern Nat. Life Ins. Co.*, 125 Wis. 349.) The contention of the defendant that it was absolved from the obligation to obtain a license and comply with the other provisions of our Banking Law, because a superintendent of banks advised that it was unnecessary, and

that the same constituted a determination and a practical construction of the statute, was properly rejected. (*Kaufman* v. *Investors Syndicate*, 268 N. Y. Supp. 161; *Kocak* v. *Metropolitan Life Ins. Co.*, 144 Misc. Rep. 422; *Van Schaick* v. *Cronin*, 237 App. Div. 182; *Broderick* v. *Horvatt*, 148 Misc. Rep. 731.)

LOUGHRAN, J.    The plaintiff is the holder of " accumulative installment certificates " issued by the defendant, a foreign corporation.    By each of these instruments the defendant certified that, in consideration of the payment of specified sums at fixed times for ten years, it would, at the expiration of that period, pay a stated amount to the recorded owner.    This action is brought to recover moneys received by the defendant in accordance with the terms of the certificates.

Upon sufficient evidence, the courts below have found: " That the defendant was an investment company in this State; that within the meaning, definition and purview of the Banking Law of the State of New York it was engaged here in the business of an investment company at the times it sold within this State to the plaintiff and her assignors the certificates that are here in issue; that the defendant did not comply with the New York State Banking Law with regard to investment companies so doing business within this State."    Judgment for the plaintiff followed upon a conclusion of law that the transactions in suit were illegal and void.    It has not been held that any act of the defendant was *ultra vires*.    The plaintiff alleges no breach or repudiation by the defendant of any obligation; no failure of consideration.    The fact is that the plaintiff and her assignors had defaulted and had abandoned their respective contract rights before they were advised of any infirmity in the undertakings of the defendant.

Accordingly this appeal presents the question whether the failure of the defendant to conform to the Banking

Law of this State is without more a sufficient basis to sustain the plaintiff's recovery. The issue is one of original statutory construction. Everything turns on the meaning of the words of a particular enactment. (American Law Institute, Restatement of the Law of Contracts, § 580; Pollock on Principles of Contract [9th ed.], p. 357; 3 Williston on Contracts, § 1771; *Mahar* v. *Harrington Park Villa Sites*, 204 N. Y. 231; *Meserole Securities Co.* v. *Cosman*, 253 N. Y. 130.)

Foreign investment companies were first subjected to the supervision of our banking authority by chapter 506 of the Laws of 1890. That statute was repealed and its provisions, in substance, made part of the Banking Law in 1892 (L. 1892, ch. 689, § 215; §§ 200–205.) The language now to be interpreted is found in articles 1, 2 and 7 (now 12-A) of the Banking Law (Cons. Laws, ch. 2), as enacted by chapter 369 of the Laws of 1914. These articles made, *inter alia*, the following provisions:

" The term, ' investment company,'   *   *   *   means any corporation other than an insurance corporation formed under the laws of this state or of any other state, and doing business in this state for the purpose of selling, offering for sale, or negotiating to individuals other than bankers bonds or notes secured by deed of trust or mortgages on real property or choses in action, owned, issued, negotiated or guaranteed by it, or for the purpose of receiving any money or property, either from its own members or from other persons, and entering into any contract, engagement or undertaking with them for the withdrawal of such money or property at any time with any increase thereof, or for the payment to them or to any person of any sum of money at any time, either fixed or uncertain " (§ 2).

" No foreign corporation shall transact in this state the business defined in this chapter as the business of an investment company or any part thereof, unless such corporation shall have

" 1. Been authorized by its charter to carry on such business and shall have complied with the laws of the state or country under which it is incorporated;

" 2. Made the deposit with the superintendent of banks required by section three hundred and six (now § 521) of this article;

" 3. Designated the superintendent of banks, by an instrument in writing duly executed, its true and lawful attorney upon whom all process in any action or proceeding by any resident of the state against it may be served with the same effect as if it were a domestic corporation and had been lawfully served with process within the state;

" 4. Received a license duly issued to it by the superintendent as provided in section twenty-seven of this chapter " (§ 304, now § 519).

The deposit directed to be made with the Superintendent of Banks was designed " as security for the depositors with and creditors of such corporation in this state " (§ 306, now § 521). The corporation was to be licensed so as to enable the Superintendent to " satisfy himself whether the applicant may safely be permitted to do business in this state " (§ 27).

It was provided by section 302 (now § 517): " No person shall act in this state as the representative of any foreign corporation in transacting the business described in this chapter as the business of an investment company unless such corporation shall have complied with the provisions of this article relating to such corporations."

The foregoing provisions conditionally restrained in this State every activity in the nature of the business of an investment company by a foreign corporation. The plaintiff, therefore, is bound to maintain that default of the defendant in observing the conditions so prescribed for the prosecution of its business in this State rendered all such business subject to being denounced as void, at the mere election of those with whom the business was

done. In our opinion so sweeping a resolution of the law-making power is not to be implied from the context and structure of the statute.

The general purpose of this legislation was the regulation of all investment companies, domestic and foreign. The safeguarding of persons in the situation of the plaintiff was, of course, an object consistent with supervision of foreign corporations like the defendant. " The nature or terms of a statute or rule of law will also sometimes indicate that it was intended for the protection of one class of individuals against another, and where this is the case a party belonging to the class whose protection was intended may recover what he has paid." (3 Williston on Contracts, § 1789; *Kneeland* v. *Emerton*, 280 Mass. 371, and cases cited.) Such an intention, we think, was not in this case distinctly revealed. "A transaction not in itself immoral is not to be held unlawful on a conjectural view of the policy of a statute." (Pollock on Principles of Contract [9th ed.], p. 358.) Here no penalty was specifically annexed to any transaction of particular character. The plaintiff argues, indeed, that absence of definition of some consequence that was to follow disregard of the law constrains the court to supply the omission by construction. It seems to us that the implication more plainly is that a sanction elsewhere provided was deemed sufficient. " Any person or corporation, who: * * * acts as agent or representative of any * * * investment corporation * * * organized outside of this state, while such * * * investment corporation * * * shall not be authorized under a license of the superintendent of banks to do business in this state * * * is guilty of a misdemeanor " (Penal Law, § 663).

In short, the statutory restrictions invoked by the plaintiff, we hold, gave neither the right nor the remedy asserted. " It is true there are cases in which the letter of the statute is not deemed controlling, but the cases

are few and exceptional, and only arise when there are cogent reasons for believing that the letter does not fully and accurately disclose the intent. No mere omission, no mere failure to provide for contingencies, which it may seem wise to have specifically provided for, justify any judicial addition to the language of the statute." ( *United States* v. *Goldenberg*, 168 U. S. 95, 103.)

Prior to any transaction here involved, the defendant duly sought authority to do business in this State conformably to our Banking Law. The application was withdrawn upon the informal advice of the then Superintendent of Banks that the defendant need comply only with our General Corporation Law (Cons. Laws, ch. 23). It is not suggested that this procedure has significance except as showing that the defendant did not purposefully ignore the conditions imposed upon it by the law of this State. That is to say, the question of the effect of willful disobedience of legislative mandate is not now before us. Rejection of the construction which the plaintiff would have us put upon the applicable statute decides this case. That construction, we have held, is one which the words of the statute will not bear.

The judgment should be reversed and the complaint dismissed, with costs in all courts.

POUND, Ch. J., CRANE, LEHMAN, O'BRIEN, HUBBS and CROUCH, JJ., concur.

Judgment reversed, etc.