In the Matter of the Petition of PHILIP BIRNER, Doing Business as DELVINO GRAPE PRODUCTS COMPANY, Petitioner, for Determination under Section 4 of the New York Arbitration Law of the Issues Arising Thereunder between the Petitioner and SANTA LUCIA WINERIES, INC., Respondent.

Supreme Court, New York County, January 31, 1935.

*Siegel & Markel* [*Leo J. Markel* of counsel; *Joseph Ratner* on the brief], for the petitioner.

*Katz & Sommerich* [*Raymond T. Heilpern* of counsel; *Benjamin Busch* on the brief], for the respondent Catz American Co., Inc.

DORE, J.   By order of this court, made pursuant to section 4-a of the Arbitration Law, the validity of a contract containing provision for arbitration is presented for determination. The essential facts as stipulated by the parties are as follows:

A contract for the purchase and sale of 400 barrels of wine, each containing fifty gallons, was made on January 29, 1934,

in the city of New York, on behalf and for the account of Santa Lucia Wineries, Inc., a California corporation, through its sole and exclusive agent in New York State, the Catz American Co., Inc. On January 29, 1934, the Santa Lucia Wineries, Inc., a non-resident winery, did not possess any license from the Alcoholic Beverage Control Board of the State of New York, but was licensed by the Federal government as a United States bonded winery. The Catz American Co., Inc., duly possessed a solicitor's license, issued by the Alcoholic Beverage Control Board of the State of New York, and was duly licensed to solicit orders for the sale of wine in the State of New York. The Delvino Grape Products Company, purchaser under the contract of January 29, 1934, was at that time duly licensed by the Alcoholic Beverage Control Board of the State of New York to deal in wines within the State of New York. A portion of the wines so purchased (over 5,000 gallons) was transported from Fresno, Cal., was received by the Delvino Grape Products Company in New York city and paid for by the said purchaser; the last delivery of wines under the contract was made to the said purchaser on or about August 21, 1934.

Thereafter the purchaser refused to accept delivery of the remaining 225 barrels of wine under said contract, and on September 10, 1934, the Santa Lucia Wineries, Inc., gave notice to the Delvino Grape Products Company (the purchaser) that it demanded arbitration, in accordance with the provision of the contract concerning arbitration. The service of such demand for arbitration caused the purchaser, Delvino Grape Products Company, to secure the order herein, presenting to this court for its determination, as preliminary to arbitration, the issue of the validity of the contract of purchase and sale. The purchaser, petitioner herein, contends that the claimed contract is absolutely void and unenforcible in the courts of this State as against the public policy of this State for the reason that the Santa Lucia Wineries, Inc., the seller, a non-resident winery domiciled in California, did not at the time of making the contract or at any time have a license to deal in wines, as required by the then existent Alcoholic Beverage Control Law.

The parties claim that this is a case of first instance and that its determination may have far-reaching effects upon the manufacture and interstate distribution of wines by non-resident wineries and wholesalers. The California winery (the seller herein) urges that the transaction here in question was conducted in accordance with the universal custom and usage of Pacific coast wineries, all duly licensed as such by the United States government, and

that to declare the contract in question invalid would create a precedent for the avoiding of many similar existing contracts now being performed and fulfilled and would subject this important renascent industry to great hardship, confusion and even possible partial destruction.

The purchaser (petitioner) asserts no breach whatever or repudiation by the seller, and claims that a mere unconscionable election made at the whim of the purchaser requires that this sale contract be denounced as unenforcible and void because the seller failed to secure and possess the license prescribed by the then existing New York State Alcoholic Beverage Control Law.

The issue presented is one of law, and requires the consideration and construction of the Alcoholic Beverage Control Law in force and effect in New York State on January 29, 1934. The pertinent statutes are certain provisions of chapter 180 of the Laws of 1933 (effective April 12, 1933) and of chapter 819 of the Laws of 1933 (effective August 29, 1933). Chapter 180 of the Laws of 1933, known as chapter 3-B of the Consolidated Laws and entitled " Alcoholic Beverage Control Law," created the State Alcoholic Beverage Control Board and required State licenses, particularly in respect to the brewing and sale of beer. Subdivison 7 of section 2 of said law provides: " ' Sale ' means any transfer, exchange or barter in any manner or by any means whatsoever for a consideration, and includes and means all sales made by any person whether principal, proprietor, agent, servant or employee. ' To sell ' includes to solicit or receive an order for, to keep or expose for sale, and to keep with intent to sell." (This section was amended by chapter 478, Laws of 1934, effective May 10, 1934, but that amendment is not here considered.)

Section 132-a, added by chapter 819 of the Laws of 1933 (the Interim Control Law), entitled " Liquors and Wines," provided:

" 1. Notwithstanding the repeal, prior to April first, nineteen hundred and thirty-four, of the eighteenth amendment to the constitution of the United States, *no* liquors or *wines* as hereinafter defined, *shall* either *be* manufactured for sale or *sold at wholesale* or retail *within the state without a license* therefor issued by the state board as hereinafter provided." (Italics mine.)

" (10.) All of the provisions of this chapter relative to beer, except as otherwise expressly provided in this section, shall apply, so far as they may be or can be made applicable to the control, regulation, manufacture, sale and distribution of liquors and wines."

Before a contract for the purchase and sale of intoxicating liquors and wines can be condemned as *malum prohibitum* it must be pro-

hibited and made void by State statute. Such merchandise and its traffic are legal for interstate commerce and not *malum per se.* (Webb-Kenyon Act, March 1, 1913, chap. 90; 37 U. S. Stat. 699; *McCormick & Co., Inc.,* v. *Brown,* 286 U. S. 131 [1932].)

The sole penalty for violation of the provisions of chapters 180 and 819 of the Laws of 1933 is that provided by section 97 of chapter 180 of the Laws of 1933, imposing fines and imprisonment, and to similar effect is section 130 of the present New York Alcoholic Beverage Control Law, being chapter 478 of the Laws of 1934.

The Legislature has not denounced the contract of sale as unenforcible and void, which it could have done had it intended that effect, and the courts should not usurp the law-making powers by inserting and adding a forfeiture or a penalty not prescribed by the letter of the statute nor shown to be its clear intent.

The recent decision of the Court of Appeals in *Fosdick* v. *Investors Syndicate Co.* (266 N. Y. 130) is directly in point and deemed controlling.

In the *Fosdick Case* (*supra*) the issue involved concerned the validity of transactions of a foreign investment company which had not complied with the provisions of the Banking Law by reason of its failure to procure a license to do business as required by the Banking Law. The general purpose of such provisions of the Banking Law was the regulation of investment companies for the protection of the investing public, but it was held not to include the avoidance of transactions at the election or whim of those with whom the business was done.

In the unanimous opinion of the court, by LOUGHRAN, J., it is stated: " The plaintiff alleges no breach or repudiation by the defendant of any obligation; no failure of consideration.  *  *  *. this appeal presents the question whether the failure of the defendant to conform to the Banking Law of this State is without more a sufficient basis to sustain the plaintiff's recovery.  *  *  *  The general purpose of this legislation was the regulation of all investment companies, domestic and foreign. The safeguarding of persons in the situation of the plaintiff was, of course, an object consistent with supervision of foreign corporations like the defendant. ' The nature or terms of a statute or rule of law will also sometimes indicate that it is intended for the protection of one class of individuals against another, and where this is the case a party belonging to the class whose protection was intended may recover what he has paid.' (3 Williston on Contracts, § 1789; *Kneeland* v. *Emerton,* 280 Mass. 371, and cases cited.) Such an intention, we think, was not in this case distinctly revealed. 'A transaction not in itself immoral is not to be held unlawful on a con-

jectural view of the policy of a statute.' (Pollock on Principles of Contract [9th ed.], p. 358.) Here no penalty was specifically annexed to any transaction of particular character. The plaintiff argues, indeed, that absence of definition of some consequence that was to follow disregard of the law constrains the court to supply the omission by construction. It seems to us that the implication more plainly is that a sanction elsewhere provided was deemed sufficient. ' Any person or corporation who: * * * acts as agent or representative of any * * * investment corporation * * * organized outside of this state, while such * * * investment corporation * * * shall not be authorized under a license of the superintendent of banks to do business in this state * * * is guilty of a misdemeanor ' (Penal Law, § 663).

" In short, the statutory restrictions invoked by the plaintiff, we hold, gave neither the right nor the remedy asserted. ' It is true there are cases in which the letter of the statute is not deemed controlling, but the cases are few and exceptional, and only arise when there are cogent reasons for believing that the letter does not fully and accurately disclose the intent. No mere omission, no mere failure to provide for contingencies, which it may seem wise to have specifically provided for, justify any judicial addition to the language of the statute.' ( *United States* v. *Goldenberg*, 168 U. S. 95, 103.) "

The court holds that the contract in issue, made in the name of the seller by its authorized agent in New York city, was in law the act and contract of the non-resident seller; that title passed f. o. b. Fresno, Cal. (*Standard Casing Co.* v. *California Casing Co.*, 233 N. Y. 413; *Rosenberg Bros. & Co.* v. *Buffum Co.*, 234 id. 338; *Hauck Food Products Corp.* v. *Stevenson & Co., Inc.*, 203 App. Div. 308); that a license was required by the State Alcoholic Beverage Control Board. (See Laws of 1933, chap. 180, § 2, subd. 7; § 132-a, added by Laws of 1933, chap. 819; Pers. Prop. Law, § 156); but that under the authority of the *Fosdick* case the contract is valid and enforcible. Accordingly the stay outstanding herein is vacated and arbitration is directed. Present final order on one day's notice on or before February 5, 1935.

That the market price fell below the contract price subsequent to the date of the last delivery is wholly irrelevant and is excluded with exception to the respondent.