## CRAWFORD v. CROWELL–COLLIER PUB. CO.

Civ. No. 906.

United States District Court
W. D. North Carolina, Asheville Division.

Dec. 30, 1949.

J. Y. Jordan, Jr., Asheville, N. C., J. B. Gray, Murphy, N. C., R. B. Morphew, Robbinsville, N. C., for plaintiff.

Jones & Ward, Asheville, N. C., for defendant.

WARLICK, District Judge.

The plaintiff in his complaint alleges that he is a duly licensed and registered physician in the State of North Carolina and has been engaged in the practice of medicine in certain of the Counties of North Carolina for many years and that at the time and times complained of he was so engaged in the practice of his profession. He further alleges, among the many allegations of his complaint, that the defendant, in the issue of its magazine, known as Collier's, dated May 15, 1948, and under the heading of an article entitled, "You'll Be Comin' Round the Mountain," published the following of and concerning the plaintiff and as it appears on Page 86 of said publication:

"In Swain County, North Carolina, mountain people swear by old Dr. Crawford, who can tell you what ails you the moment he pokes his nose through the door—and sniffs. For Dr. Crawford diagnoses entirely by his sense of smell. Each disease, he finds, has its own peculiar odor; and after smelling it out, he has only to sniff at his medicine bottle to mix together just the right dose.

"For several years now, North Carolina law has required the licensing of physicians. But Dr. Crawford is one of the old-time country doctors who practice under the Grandfather Clause, which permits any physician acknowledged by the local community to practice there for the rest of his life."

The plaintiff alleges that he was materially damaged and asks to recover $50,000 compensatory and $25,000 punitive or smart money damage.

The cause came on for hearing before a jury at the Special, December, 1949, Term at Asheville and after the plaintiff had offered evidence and rested his case and on motion of the defendant for a directed verdict,—the motion was granted and the cause dismissed in favor of the defendant.

From the allegations of the complaint and the evidence offered on the part of the plaintiff in substantiation thereof, it appears that the plaintiff has put his entire lawsuit in the physician's kit, since it is made to appear that he is wholly relying upon the defamation of his pro-

fessional standing as a physician in the community in which he lives. He alleges no special damage but proceeds entirely and wholly upon the defamation being libelous per se. Since such is his manner of choosing, it becomes necessary under the evidence to determine whether or not the plaintiff, as he alleges, is a duly licensed and registered physician in North Carolina. If he is, then his controversy should go to the jury,—if he is not, then it must fail for he then could not be legally entitled to practice medicine in North Carolina.

From a close inspection and study of the North Carolina Statutory Law, it is found that the first enactment of the General Assembly with respect to physicians and surgeons came about at the Assembly's meeting in 1858-59, Chapter 258, Section 2, with the Act entitled, "An Act to incorporate the Medical Society of the State of North Carolina, and for the establishment of a Medical Board of Examiners." This Act was entitled, "Medical Society of the State of North Carolina," and from and after the 15th of April, 1859, it prohibited the practice of medicine or surgery unless with a license first obtained from the State Board of Examiners. This Act likewise provided for the continuation of those already in the practice and conversely was to apply to those only thereafter who proposed to begin the practice of medicine in North Carolina.

The next enactments relating to the practice of medicine is found to be Chapters 117 and 261 of the Laws of 1885, in which amendments were made to Chapter 258 of the Laws of 1858-59. These amendments pertained largely, if not wholly, to permitting those to practice "who have a diploma from a regular medical college prior to January 1, 1880.

We next find that Chapter 181 of the Laws of 1889 makes certain amendments to the then existing laws, principally as applicable herein by striking out the words "prior to January 1, 1880" and inserting in lieu thereof "prior to the 7th of March, 1885", and making provision for the first time for one to appear before the Clerk

of the Superior Court of the County in which he resided and exhibit a license from the Board of Medical Examiners or a diploma issued by a regular medical college prior to the 7th day of March, 1885, or to make oath that he was practicing medicine or surgery in this State prior to the 7th of March, 1885,—the law makers apparently desiring to give every opportunity to one who had practiced before March 7, 1885, to register as such. However, the different laws, as recapitulated, have always required as a prerequisite to practice a registration with the Clerk of the Superior Court of the County in which applicant resided and in which he desired to practice.

Thereafter, it seems that the Assembly remained silent until the regular session of 1921 when it enacted Chapter 47 of the Public Laws of 1921 entitled, "An Act to amend the Medical Licensure and Medical Practice Law of Article I of the Consolidated Statutes of North Carolina of the year 1919", this amendment entitled as above obviously being made in view of the fact that all of the statutes enacted theretofore were grouped under the then existing Statutory Law in North Carolina. Section 12 of said Act provides as follows, speaking of those who may practice as physicians in North Carolina: "Physicians who have a diploma from a regular medical college and were practicing medicine and surgery in this State prior to the seventh day of March, one thousand eight hundred and eighty-five."

At a special session of the General Assembly of North Carolina convening later in the same year of 1921, a new chapter was written into the statutory law with respect to the practice of medicine, and among its applicable terms we find that Chapter 44 of said extra session of 1921, and in Section 8 thereof, amends Section 12 above set out and thereupon as amended reads as follows: "Physicians who have a diploma from a regular medical college and were practicing medicine and surgery in this State prior to the seventh day of March, one thousand eight hundred and

eighty-five, and who are properly registered as required by law."

We further find that Section 9 of said Chapter 44 strikes out certain portions of Section 6623 of the Consolidated Statutes and leaves the following effective: "Any person desiring to engage in the practice of medicine or surgery shall personally appear before the clerk of the superior court of the county in which he resides or practices, for registration as a physician or surgeon. The person so applying shall produce and exhibit before the clerk of the superior court a license obtained from the board of medical examiners of the state", which, when done, authorizes and directs the Clerk to register such applicant in a book to be kept in his office for this purpose, entitled, "Register of Physicians and Surgeons," and the Clerk thereupon issues the applicant a certification under his seal of office.

These amendments grouped together and as specifically set out in the preceding paragraph indicate the law as of that time and as of today, with the possible exception of minor amendments which do not go to the heart of the matter and in no wise affect this controversy.

■ The plaintiff, Dr. Crawford, in his evidence, testified that he was born in Clay County, North Carolina, on June 22, 1866, and that in 1883 when he was seventeen years of age, he began working with a Dr. Moore who at that time was practicing medicine in Clay County; that he continued in such work until Dr. Moore left Clay County and returned to his native state of Louisiana, which the plaintiff believes was in the year 1887. The plaintiff's evidence tends to show from his admissions that he was never licensed in the sense that he took an examination before the examiners of the Medical Society of North Carolina. He further makes an admission that he has never held a diploma from a recognized medical college and that he at no time ever undertook to register as a physician and surgeon or either or both under certain sections of the Statutory Law with the Clerk of the Superior Court of any of the Counties of North Carolina until the 27th day of

August, 1929, when he on the same day presented himself before the Clerks of the Superior Court of Cherokee County and of Macon County and that subsequently on the 23rd of October, 1930, he made a similar appearance before the Clerk of the Superior Court of Graham County and undertook to do a like thing in registering before him for practicing in that County,—these registrations apparently coming about after plaintiff's conviction in a court of record on January 14, 1929, for practicing medicine without a license in Jackson County, North Carolina. The plaintiff's purported registration in 1929 was apparently eight years or more after the repeal of the statute, assuming that he otherwise would be entitled to register as having practiced prior to the 7th day of March, 1885. The plaintiff, therefore, can in no sense qualify as a physician and surgeon and, therefore, any defamatory article published of and concerning him in his professional standing would obviously fail since he is lacking in that particular qualification.

■ The statements complained of in this action become libelous, if at all, only because they could be classified as relating to one who is authorized to engage in the practice of medicine at the time of the alleged publication and could not be in law injurious to one who is not a physician or surgeon. A publication which relates solely to the professional conduct of a person engaged in the practice of medicine is not actionable if such person is not legally entitled to practice the profession of medicine. "In order to bring an action for defamation in such a case (i.e., when the plaintiff has been charged with misconduct or incapacity in the discharge of his professional duties) plaintiff must be a legally licensed practitioner in the jurisdiction." Hargan v. Purdy, 93 Ky. 424, 20 S.W. 432; Newell, Slander and Libel, 4th Ed., page 179.

In the case of Hargan v. Purdy the action was one for libel and slander in which it was alleged that the defendant in words written and spoken had said of the plaintiff: "Have nothing to do with him. He is no doctor; nothing but a travelling quack. * * *" [93 Ky. 424, 20 S.W. 433.]

On the trial of the matter, the Court having found that the plaintiff had no such authority or that his authority to practice medicine was insufficient, dismissed the complaint. The Kentucky Court of Appeals, in affirming the dismissal, had the following to say 20 S.W. at page 433:

"For, if he was then undertaking to practice medicine in violation of the statute of the state, he could not, in contemplation of law, have been injured or sustained damage from being called an 'empiric' or 'quack;' or, at all events, he could not be heard in a court of justice to complain that words had been spoken or written of him having the simple effect to disable or deter him from violating a penal law. * * *

"We think appellant was not legally authorized to practice medicine in this state when the alleged slanderous words were published, and, as a legal sequence, has no cause of action therefor."

"Physicians, Dentists, Druggists, etc.— Words which impute to a physician a general want of professional knowledge or skill are actionable per se, whether spoken or written, and this rule applies to protect others pursuing occupations and professions allied to medicine and surgery, such as dentists, druggists, and midwives. * * *

"In accordance with general principles previously discussed, to render words spoken or written of and concerning a physician actionable per se as being injurious to him professionally, they must affect him in his professional character. It is not enough that the language disparages him generally, or that his general reputation is thereby affected.

"A further limitation on the right of recovery is that the person in question must be practicing his profession according to law, and if he is not doing so, but is practicing without a license when a license is required, he cannot recover damages for statements alleged to have injured him in his profession." * * * American Jurisprudence—Vol. No. 33—pp. 90, 91.

Therefore, the directed verdict is granted and the cause of action of the plaintiff is dismissed. Counsel will submit judgment.