DIAPULSE MANUFACTURING CORP. OF AMERICA, Abraham J. Ginsberg, Jesse Ross, William F. Kelly, Jr., Bernard O. Siler, Irving Grad and Joseph Ross, Plaintiffs,

v.

The BIRTCHER CORPORATION and Cecil J. Birtcher, Defendants.

DIAPULSE MANUFACTURING CORP. OF AMERICA, Plaintiff,

v.

The BIRTCHER CORPORATION, Defendant.

Nos. 61–C–175, 61–C–355.

United States District Court E. D. New York.

Aug. 15, 1963.

Edwin J. Freedman, Freeport, N. Y. (Freedman, Weisbein & Furlong, Freeport, N. Y., of counsel), for plaintiffs.

Thomas H. McManus, (Lynch & McManus, New York City), for defendant.

DOOLING, District Judge.

In two libel actions (consolidated for trial) in which the alleged libel is that plaintiffs' "Diapulse" physiotherapeutic device was valueless and the claims made for it unfounded in fact, defendants, by permission, move for leave to plead as complete defenses that the plaintiff New York manufacturer or wholesaler of the Diapulse physiotherapeutic device had not applied for and received a registration certificate as a manufacturer of "devices" from the New York State Board of Pharmacy as required by New York Education Law, § 6805, subd. 5 which provides:

"§ 6805. Registration and operation of establishments * * *

"5. Manufacturer; wholesaler. No manufacturer, bottler, packer and/or wholesaler of drugs or devices shall operate as a manufacturer, bottler, packer and/or wholesaler of drugs or devices until the proprietor thereof has applied for and received a registration certificate from the board. Such proprietor of every manufacturing, bottling, packing and/or wholesaling establishment shall thereafter biennially in the month of September apply for registration, pay the required registration fee, and receive a certificate of registration which must be conspicuously displayed at all times in the place of business. The initial fee for a new certificate of registration required under this subdivision shall be one hundred dollars. The biennial registration fee shall thereafter be fifty dollars for each such place of business. In the event that the location of such place of business shall be changed, the proprietor thereof shall apply to the department for inspection of the new location and endorsement of registration certificate for such new location. The fee for such inspection and endorsement shall be fifty dollars, unless it shall appear to the satisfaction of the department that the change in location is of a temporary nature and due to fire, flood or other disaster."

Plaintiffs oppose the motion as prejudicially belated and, by cross motions, seek to strike the defense, if allowed to be interposed, as insufficient in law and unsupported on the facts agreed on by the parties (or put beyond dispute by their affidavits).

The litigation commenced on February 15, 1961. Defendants' counsel did not learn of the possible applicability of Education Law, § 6805, subd. 5 until after the answer was interposed in December 1961. By letter of February 7, 1962, he inquired of the Pharmacy Board as to whether plaintiff was registered and he was advised that it was not and, in the understanding of the clerk writing on behalf of the Board, was not required to be registered. When defense counsel was making ready for trial over a year later he reverted to the topic and was then told by the Secretary of the Board that if the diapulse device was as described the manufacturer and wholesalers would have to register just as did diathermy machine manufacturers. Shortly after this call defense counsel told plaintiff's counsel that he meant to rely on the lack of registration as a defense and, if it had to be pleaded to be available (which he contended it did not have to be), he would apply at pretrial for leave to amend [Rule 16(2)]. In view of the importance of the possible defense and the lapse of time before its assertion, the matter was referred by the pretrial judge to motion term so that the questions of the right to amend and the validity of the defense could be fully briefed and argued.

The motion for leave to amend is granted. The defense is one that, if

valid, gives effect to a public policy. The delay in pleading it has not increased the plaintiffs' difficulty in meeting the defense nor altered, objectively, the plaintiffs' rights, although, if the defense is valid, plaintiffs will have lost the cost of preparing the case to date. Plaintiff may not complain for, under our system, it must be treated as prescient of this point of law and to have taken the risk of it. Apart from that, defendant's counsel go far to explain the delay in terms exculpatory certainly of their client and of counsel as well. See 3 Moore, Federal Practice (2d ed.) 829–830, 833, 835. To the extent that the matter is discretionary under Rule 15(a) the discretion is exercised in favor of allowing the amendment for the reasons and on the grounds stated without consideration of the merit of the defense tendered beyond observing that it is not on its face frivolous and that, in the circumstances of its presentation, it is not tendered in bad faith or for the purpose of delay or with a view to injecting legally insufficient but prejudicial matter into the trial.

■ The first issue arising on the motions to strike the defense is the meaning of the statute. Section 6805 is part of Article 137—"Pharmacy"—of the Education Law but it now embraces much of the subject matter and uses much of the language' and definitions found in the Federal Food, Drug & Cosmetic Act (21 U.S.C.A. § 301 et seq. except §§ 341–348, relating to food). However, there is not in the Federal Act any section comparable to Section 6805, which provides for registration of pharmacies, drug stores, registered stores, manufacturers, wholesalers, and auctioneers.

Section 6801, subd. 26 defines a "device" as including an apparatus intended for use in the cure, mitigation or treatment of disease or to affect the structure or any function of the body [See 21 U.S.C.A. § 321(h)]. Plaintiff's device is a "physiotherapeutic modality or device" of the class of "electronic devices designed to treat human ills by application to areas of the human body". Plaintiff's Diapulse machine is, in conse-

quence, a "device" within the meaning of that term as it is used in Article 137.

■ Section 6805, subd. 5, quoted above, requires all manufacturers and wholesalers of "devices" to register with the State Board of Pharmacy and that would inescapably apply to plaintiff unless excepted under Section 6816, subd. 2 e which provides that Article 137 shall not apply—except as to adulterating, misbranding and substituting—

"e. To surgical or dental instruments and accessories (except thermometers and hypodermic syringes), gases, oxygen tents, gas pressure reducing regulators, X-ray apparatus, therapeutic lamps, splints and stethoscopes, their components, parts and accessories, or to equipment, instruments, apparatus and contrivances used to render such articles effective in medical, surgical or dental treatment; or to articles or substances intended for generally recognized mechanical or industrial consumption or use."

The rationale of the exclusion is puzzling: counsel advise that the bill jacket discloses that it was pointed out before the bill was signed that the exception did not embrace "a lot of other hospital equipment such as basal metabolism machines, electrocardiographs, physiotherapy equipment, etc." The bill jacket also included a summary of the bill submitted to Governor's Counsel which said of the registration provision (then numbered § 1354)

"Section 1354 includes a provision useful in the enforcement of the law. It requires every manufacturer, bottler, packer, and wholesaler of drugs or devices in this State to register with the Board at a nominal fee. The purpose is not to receive a fee beyond enough to cover expenses. The purpose is to have a list of all places in the State at which drugs and devices are manufactured, which will greatly facilitate the enforcement of the law."

It will be evident that there is no clue to the principle of the exception and so it

is all but impossible to treat it as capable of exempting a type of device not in use at the time of the enactment but within some discernible principle of exception.

However, administrative history, again uncertain in principle although clear enough in its practice, all but turned the exception inside out: only manufacturers of clinical thermometers, hypodermic syringes—and contraceptive devices—were thought of as being required to register. It is not known exactly who was permitted to register, even if not required to under the administrative practice. Counsel for both parties, together and separately, interviewed staff of the Board of Pharmacy: as noted above, defense counsel, originally advised that a manufacturer of such devices did not have to register, was also later advised that it would have to register inasmuch as diathermy manufacturers were required to register; in a joint interview of counsel with the Executive Secretary, a staff attorney and an employee of the Board, it was stated that the Board required registration only of makers and wholesalers of clinical thermometers, syringes and contraceptives and did not require the makers of diathermy machines and similar devices to register; this action was ascribed to the effect of Section 6816, subd. 2 e, which was said possibly to exclude such devices as being "therapeutic lamps" although concededly neither diathermy or diapulse machines are considered, mechanically, to be "lamps"; the intimation of the Board's Counsel that the plainly *un*excepted devices (clinical thermometers and hypodermic syringes) are usually sold in pharmacies and that the elusive "principle" of the exception is that it embraces articles generally sold outside the pharmacy directly to hospitals and physicians through surgical supply houses is attractive if it is thought that Section 6816, subd. 2 e must have a principle and cannot be read as an arbitrary collection of randomly excepted devices that have nothing in common and do not in any case exhaust the class of devices that have the same public health, welfare and safety characteristics as the one named. In any case, after the joint interview of counsel, and on May 20, 1963 Counsel to the State Education Department, The University of the State of New York, advised plaintiff's counsel by letter: "The Department has never registered manufacturers of diathermy or similar machines and is not of the view that such registration is required." There is no question between the parties that a ruling as to diathermy machines (far more familiar than the more recently developed Diapulse machine) would properly cover Diapulse machines for the latter are no more "devices" that are diathermy machines.

What is baffling about the exception of Section 6816, subd. 2 e is not its meaning, which is clear, as any bare catalogue must be, but the legislative purpose, the principle of selection: that remains obscure and inhibits interpretation of the statutory exception as extending to exempt unnamed but similar devices. Despite the weight limitedly given to the interpretation of statutes by those having the power and duty to adopt regulations under and to administer a statute, the present exception cannot be regarded as extending to the Diapulse machine. Cf. People ex rel. West Side Electric Co. v. Consolidated Telegraph & Electrical Subway Co., 1907, 187 N.Y. 58, 66, 79 N.E. 892; Adamson v. Schreiner, 1st Dept. 1916, 176 App.Div. 95, 99–100, 162 N.Y.S. 653; Thruway Motel v. Hellman Motel Corp., Westchester Co., 1958, 11 Misc.2d 418, 422, 170 N.Y.S.2d 552. The effect, here, of the administrative history is not to fix the meaning of the statute but to exculpate non-compliance with it; it is unthinkable that on the facts a prosecution for non-compliance would lie or penal consequences attend non-compliance, whatever may be plaintiff's future duties with respect to registration. Meade v. Lamarche, 3d Dept.1912, 150 App.Div. 42, 134 N.Y.S. 479; People v. Bates, App.Term 1st Dept.1923, Sp.Sess., 198 N.Y.S. 440.

■■ The registration required of manufacturers and wholesalers of devices is not central but ancillary to the scheme of regulation established by Article 137. Unlike the parts of Article 137 that relate to the "licensing" of pharmacists, no statutory system for demonstrating qualification for "registration" is established; the pharmacist is formally examined for abstract and applied skill in pharmacology and he must be of good character (Sections 6802, 6803). Formal procedures exist for revoking the "licenses" issued to pharmacists and the "certificates of registration" issued to the proprietors of pharmacies (Section 6805, subd. 1) on the basis of proof of specified deficiencies in character or acts of misconduct (Section 6804, subds. 1, 2). No provisions implement the bare requirement that manufacturers and wholesalers register; there is no indication that they could be refused the right to register for inexperience, unskillfulness, or bad character or that their registrations could be revoked. No statutory duties hinge on registration and failure to register confers no immunity from the other positive provisions of Article 137. The unregistered manufacturer or wholesaler must comply with all the provisions of Article 137; his factory or warehouse is subject to inspection (Section 6819); the "prohibited acts" are prohibited to him under state as under federal law (which requires no registration) (Section 6821, 21 U.S.C.A. § 331); he may be enjoined under state as under federal law (Section 6824, 21 U.S.C.A. § 332); and his adulterated or misbranded products may be seized and condemned under state as under federal law (Section 6815, 21 U.S.C.A. § 334). The registration is not truly a license because it does not exclude the unfit or grant a right to engage in a restricted calling, nor does registration function as the fulcrum of regulation, for the nature of the regulation and the duties of compliance are wholly unchanged by registration or failure to register.

Defendants are not, in respect of those of their interests or privileges involved in the present case, within the class meant to be protected by Article 137. The Article is not meant to protect the interests of competitors of the establishments involved nor the interests of critics of particular devices; it is a police measure directed to the protection, principally, of the public health. Such a statute as this has not the effect of "creating a species of judicial outlawry to shield a wrong-doer from a just responsibility for his wrongful act", to use the striking language of Wood v. Erie R. Co., 1872, 72 N.Y. 196, 200. Lack of license does not put one beyond the pale, at least not for all purposes. Rosasco Creameries, Inc. v. Cohen, 1937, 276 N.Y. 274, 11 N.E.2d 908 enforced a sales contract made by an unlicensed dealer to another dealer, noting that the license requirement was meant to protect the public not other dealers, that the exceptions from the statute's licensing requirement disclosed that the conduct of plaintiff was at worst malum prohibitum, and that in the absence (as here) of express statutory withdrawal of the right to sue unless licensed, the denial of the right to relief would have been disproportionate "to the requirements of public policy or appropriate individual punishment." Cf. Sajor v. Ampol, Inc., 1937, 275 N.Y. 125, 9 N.E.2d 803 (security sale enforceable although there was a failure to file the notice required under the Martin Act); Matter of Birner, N.Y.Co.1935, 155 Misc. 722, 282 N.Y.S. 257 (failure of California wine maker to have local ABC license not enough to illegalize sale to licensed New York dealer). Different are cases in which the business itself is illegal and may be conducted only in limited aspects by specific permittees; e. g., traffic in liquor when the National Prohibition Act was in force. Adler v. Zimmerman, 1922, 233 N.Y. 431, 135 N.E. 840.

The law of New York is not cast in any rigid mold and it clearly recognizes and distinctly enforces the principle that unlicensed actors are not entitled to judicial relief where the policy of the licensing statute would be sub-

verted by granting the relief sought. The principle does not reach this case even if it could properly be regarded (and it cannot be) as one involving a true "license", or a registration having significant policy overtones, or a non-compliance that was circumstantially open to penal visitation. The case rather falls within the limiting principle that a wrong-doer may not rely on an irrelevant and unrelated violation of law on plaintiff's part. Cf. Clark v. Doolittle, 4th Dept.1923, 205 App.Div. 697, 199 N.Y.S. 814 (rejecting the "trespasser on the highway" doctrine). Brown v. Shyne, 1926, 242 N.Y. 176, 180, 151 N.E. 197, 44 A.L.R. 1407, makes plain that where the ultimately relevant fact is whether proper skill or negligence was displayed, the bare absence of a professional license is not evidence of lack of skill, for the possession of a license confers no skill and, if lack of skill on the particular occasion is shown, the possession of a license could not have obviated the negligence of the occasion; the powerful policy that underlies the requirement of a professional license was not considered to preclude defendant from contending that he exhibited professional competency. So here, plaintiff is not precluded from showing, if it can, that its machines are meritorious and the disparagement unwarranted; the policy of the statute is not concerned with defendant's interest in commenting on the machines but with the public's interest in safe machines.

The libel cases seemingly most nearly in point do not evidence a principle on which defendant can rely. Williams v. New York Herald Co., 1st Dept.1914, 165 App.Div. 529, 150 N.Y.S. 838, held that the plaintiffs Williams and Lambert could not sue for libel a newspaper that charged "Lambert Dairy Co." with selling bad milk when it appeared that they had not filed a certificate that they were conducting business under that fictitious name (Penal Law, § 440). The Court said, "If plaintiffs were suing for damages to themselves as individuals, a different question would be presented, with which we are not now called upon to deal." The intimation is that the action failed because the name was allegedly defamed and the "name" had no legally protected existence. The case was unsatisfactorily distinguished in Kornblum v. Commercial Advertiser Assn., Sup., 1917, 164 N.Y.S. 186, aff'd on other grounds, 2d Dept.1918, 183 App.Div. 615, 170 N.Y.S. 249, which reached a precisely opposite result. The Williams case cannot be thought to reject the principle of Wood v. Erie R. Co., supra, that the statute involved meant to protect those dealing contractually with the firm and not to protect tort feasors. And the Williams case would seem to be narrowed certainly if not made doubtful by Frey v. St. Lawrence Residence Club, Inc., 1st Dept. 1945, 269 App.Div. 300, 55 N.Y.S.2d 849. See also Green v. Le Beau, 2d Dept.1953, 281 App.Div. 836, 118 N.Y.S.2d 585. March v. Davison, 1842, 9 Paige Ch. 580 is dictum so far as it assumes that an unlicensed physician cannot sue for a false accusation of malpractice (9 Paige Ch. at p. 586); the essential point of the case is that one who is not a licensed physician but is practicing lawfully as a doctor applying to patients roots, barks, or herbs grown in the United States and is charged by the defendant's publication with having killed a woman in doing so, has not been libelled because he has not been charged with killing her knowingly or intentionally or while using on her poisonous medicines of foreign origin (9 Paige Ch. at p. 587); Chancellor Walworth thus considered that, unless the publication charged a crime, it charged nothing libellous in the absence—doubtless—of a claim of special damages. But such cases as the dictum in March v. Davison and Crawford v. Crowell-Collier Publishing Co., W.D.N.C., Asheville Div. 1949, 87 F.Supp. 509, holding that when the libel sued on is actionable *per se* only if spoken of a physician, an unlicensed physician cannot recover for it, reflect the fact that the interest allegedly invaded is the professional right to conduct a professional practice unimpaired

by false imputations of professional incompetence and the consequent impossibility of having any legal damage if there is no right to conduct any professional practice. See 87 F.Supp. at p. 511. Such cases deal with veritable licenses obtainable only on proof of qualification to practice and do not deal with such a statute as that here involved. Generally, it is not supposed that the presence or absence of a license is relevant where the case involves allegedly tortious misconduct toward the unlicensed person on the part of persons who are not the statutory beneficiaries of the license provision. See Annotation, 13 A.L.R.2d 157. Restatement, Torts, § 889; Cf. 6A Corbin, Contracts 710 et seq., § 1512.

It is, therefore, concluded that the defense is insufficient in law and, independently, that on the agreed facts concerning the enforcement of the law there would not be present here a punishable violation of the law on the part of the plaintiff corporation.

The defense is one that, if good, is dispositive of the case and which appears to require to its final determination nothing not now in the record, for it seems unlikely that formal evidence from the Board of Pharmacy or a survey of its registrations would alter the case. Since the trial of the whole case will apparently involve witnesses from other parts of the country, including California, and will, on the basis of the pre-trial estimates, take ten court days, it may be that counsel will consider that a statement under 28 U.S.C.A. § 1292 should be included in the order; or, it may be that, if either counsel is dissatisfied with the record of facts affecting the defense, they might first be set at rest by depositions of Pharmacy Board personnel taken before the order is settled. It is considered that the question whether the defense is good on the basis of the facts as stated above (plus the concession that neither plaintiff corporation nor its manufacturer is registered) qualifies from the District Court point of view under 28 U.S.C.A. § 1292 (b). Settle order on five days notice.