**KEY PHARMACEUTICALS, INC.,**
**Plaintiff,**

v.

**HANS LOWEY et al., Defendants.**

**No. 71 Civ. 3854.**

United States District Court,
S. D. New York.

Feb. 23, 1972.

Kaufman, Taylor, Kimmel & Miller, New York City, for plaintiff; Irwin M. Taylor, Stuart Newmark, New York City, of counsel.

Dornbush, Mensch & Mandelstam, New York City, for defendants Hans Lowey, Bonded Laboratories, Inc. and Forest Laboratories, Inc.; Allen G. Schwartz, Paul B. Bergins, New York City, of counsel.

EDWARD WEINFELD, District Judge.

The plaintiff and Hans Lowey, Bonded Laboratories, Inc. and Forest Laboratories, Inc.,[1] three of the named defendants herein (hereafter the defendants),[2] have had contractual relations going back to 1953. These centered about certain pharmaceutical tablets with "sustained action" quality developed by Lowey. Under the terms of the initial

---

1. Forest Laboratories acquired the assets of Bonded in 1956.

2. This term does not include the defendants Lewis Stern and Amfre-Grant, Inc.;

Stern has not been served with process; the defendant Amfre-Grant, Inc. allegedly has been served, but has not appeared or answered.

agreement, plaintiff agreed to purchase stated minimum amounts of such tablets from Bonded, market the same on an exclusive basis in the United States and certain foreign countries, and pay royalties to Lowey. In 1963, the defendants commenced an arbitration proceeding under the then existing contract in which the parties were represented by their respective present counsel, which arbitration, after extended negotiations, was settled by the execution on December 1, 1964, of a new agreement, referred to as the "current agreement." Under its terms, plaintiff agreed to pay royalties to defendants on sales of sustained action tablets manufactured by processes other than that of defendant Lowey; there were also exclusive territorial market arrangements similar to those contained in the prior contracts. Plaintiff, over a period of time, failed to make royalty payments and refused to honor related commitments imposed upon it under the current agreement; in addition, defendants claimed plaintiff breached the agreement with respect to alleged sales made by plaintiff in Europe. Finally, on July 26, 1971, after considerable correspondence and repeated demands upon plaintiff for payment and other compliance with the terms of the current agreement, the plaintiff's president, an attorney, then recently installed, acknowledged that royalty payments were due to the defendants and expressed readiness to pay upon condition defendants execute an affidavit of compliance with the terms of the current agreement. Although the affidavit was signed and submitted to plaintiff, no payment was forthcoming from it. Plaintiff's president, on August 18, after acknowledging unsuccessful attempts to reach him, wrote to defendants' attorney: "I would rather handle our situation with you face to face, at which time I think we will have several things to discuss in addition to the question of back royalties." He did not identify the "several things to discuss"; however, no payment of royalties was made. There-

upon, the defendants' attorney notified plaintiff by telegram on August 17 that unless payment were made and the agreement otherwise complied with, arbitration proceedings would be instituted, and in due course, on September 16, a demand for arbitration was served under provisions of the current agreement, which reads:

"In the event that there be any dispute between the parties hereto concerning this agreement, its interpretation or its enforcement, or any matters arising therefrom, such dispute shall be disposed of by arbitration before the American Arbitration Association of the City of New York in accordance with its rules and regulations then obtaining."

Plaintiff anticipated the formal demand for arbitration by filing this lawsuit on August 27 charging Lowey, Bonded and Forest with fraud in the inducement of the current agreement and seeking to rescind it; in addition, plaintiff asks for a refund of royalties previously paid to said defendants under the agreement, as well as compensatory and punitive damages and an accounting for benefits derived by all the defendants, by reason of alleged fraudulent conduct. As a second cause of action against the defendants Amfre and Stern, plaintiff alleges that those defendants intentionally and willfully interfered with plaintiff's "advantageous business relationship with the other defendants with respect to the exclusive rights conferred by the current agreement," and plaintiff seeks damages from said defendants.

The defendants, on September 16, moved for an order to stay this action pending arbitration as provided for by the current agreement, pursuant to the Federal Arbitration Act, 9 U.S.C., sections 1 et seq. Thereafter, on October 8, plaintiff cross-moved for an order (1) granting plaintiff leave to serve an amended complaint containing a third claim alleging that the current agreement violates the antitrust laws in vari-

ous respects, and (2) staying the arbitration pending a determination of its antitrust claim.

Absent the proposed amended antitrust claim, it is not seriously disputed that the defendants are entitled to stay plaintiff's action; the contract clearly evidences a transaction involving commerce and the alleged fraud in inducing the contract, given the comprehensive arbitration clause, is for determination by the arbitrators.[3] However, plaintiff, in the event its motion to amend its complaint is granted, simultaneously seeks a stay of arbitration upon the ground that the antitrust claims are not arbitrable and must be resolved by the court.[4]

The defendants charge that the plaintiff's "jumping the gun" by its commencement of this suit after it was notified defendants would demand arbitration was solely to delay defendants in recovering their royalty payments and in enforcing their rights under the current agreement; that the rescission claim based upon alleged fraud was intended for that very purpose; that the antitrust claim was advanced for the first time seven years after the current agreement was in existence only after plaintiff became aware, following the defendants' motion to compel arbitration and to stay plaintiff's suit, that the fraud issue was arbitrable—a claim asserted in a continuing effort to delay payment of royalties admittedly due, and to defeat arbitration—in short, that plaintiff has engaged in dilatory tactics.

The court, on these cross-motions, does not pass upon the charges and countercharges of the parties. However, a close study of the voluminous and prolific affidavits, containing much matter irrelevant to the present applications, suggests there is some warrant for the defendants' charge that plaintiff is seeking to delay and defeat the payment of royalties and to terminate the current agreement, some of the provisions of which plaintiff now finds onerous. It should be noted that the territorial marketing provisions of the agreement relied upon in part by plaintiff to vitiate the contract as violative of the antitrust laws were included therein upon plaintiff's insistence and drafted by its own attorneys. However, the court does not here pass upon the merits of plaintiff's alleged antitrust claim. Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend pleadings "shall be freely given when justice so requires"; the court is not disposed to foreclose plaintiff from asserting its claim, although belatedly advanced.[5] However, "justice" does not require that in affording plaintiff the opportunity to serve an amended pleading, the defendants be subjected to the risk of nonpayment of its royalties, long past due. The rule may not be used as an instrument of injustice.[6]

3. *See* Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

4. *See* Coenen v. R. W. Pressprich & Co., 453 F.2d 1209 (2d Cir. 1972); Power Replacements, Inc. v. Air Preheater Co., 426 F.2d 980 (9th Cir. 1970); A. & E. Plastik Pak Co. v. Monsanto Co., 396 F.2d 710 (9th Cir. 1968); American Safety Equipment Corp. v. J. P. Maguire & Co., 391 F.2d 821 (2d Cir. 1968). The stay is sought "until the conclusion of the within action."

5. Absent a claim or defense that is frivolous or patently insufficient, its substantive merits or lack thereof are not considered in a motion for leave to amend. Fox v. City of West Palm Beach, 383 F.2d 189 (5th Cir. 1967); Breier v. Northern California Bowling Proprietors' Ass'n, 316 F.2d 787 (9th Cir. 1963); Miller v. Steinbach, 43 F.R.D. 275 (S.D.N.Y. 1967); Diapulse Mfg. Corp. v. Birtcher Corp., 221 F.Supp. 139 (E.D.N.Y.1963) (subsequent history omitted).

6. *See, e. g.,* Max E. Miller & Son, Inc. v. Lewis, 51 F.R.D. 550 (E.D.Wis.1971); Gunnip v. Warner Co., 43 F.R.D. 365 (E.D.Pa.1968); Portsmouth Baseball Corp. v. Frick, 21 F.R.D. 318 (S.D.N.Y. 1958).

Under the circumstances, leave to amend is granted, but upon condition that plaintiff post cash or a surety company bond to secure the payment of the amount of royalties due to date plus those estimated to become due during the pendency of plaintiff's antitrust claims, in which event the requested stay of the arbitration will be granted pending the final determination of the antitrust claims; otherwise, upon failure of the plaintiff to post the security at or prior to the service of the amended complaint within twenty days from the date hereof, the motion for leave to amend is denied and the defendants' motion to stay the action until arbitration can be had in accordance with the agreement of the parties is granted.[7]

The plaintiff's request that the arbitration be stayed because the defendants Lewis Stern and Amfre-Grant, Inc. are not parties to the agreement which contains the arbitration clause is without substance.[8] To accept its position would provide a convenient and easy means to defeat a binding arbitration provision by simply naming as parties to a litigation those who are not parties to the agreement.[9] That they are named as parties in this action does not prevent the arbitration from going forward as against the defendants herein as to arbitrable matters.

The court will hear the parties with respect to the amount of the bond, at which time the court will fix the amount thereof, following which a proposed order shall be submitted carrying out the terms of the court's disposition.

---

7. Courts may fashion reasonable conditions to the granting of leave to amend. Firchau v. Diamond Nat'l Corp., 345 F.2d 269 (9th Cir. 1965); Lone Star Motor Import, Inc. v. Citroen Cars Corp., 288 F.2d 69 (5th Cir. 1961); Parissi v. Foley, 203 F.2d 454 (2d Cir. 1953), rev'd on other grounds, 349 U.S. 46, 75 S.Ct. 577, 99 L.Ed. 867 (1955); Max E. Miller & Son, Inc v. Lewis, 51 F.R.D. 550 (E.D. Wis.1971); Maynard, Merel & Co. v. Car-

cioppolo, 51 F.R.D. 273 (S.D.N.Y.1970); Congoleum Industries, Inc. v. Armstrong Cork Co., 319 F.Supp. 714 (E.D.Pa. 1970); Shelley v. The Maccabees, 26 F.R.D. 10 (S.D.N.Y.1960).

8. *See* Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co., 339 F.2d 440 (2d Cir. 1964).

9. Hilti, Inc. v. Oldach, 392 F.2d 368, 369 n. 2 (1st Cir. 1968).